# APPEAL OF UNION METAL MANUFACTURING CO.

Docket No. 2524. Decided July 20, 1926.

1. The doctrine of *res adjudicata* did not, under the Revenue Act of 1924, operate to make a finding of fact in a former case, involving 1918, as to the value of patents, conclusive as to such fact in a case involving 1919.

2. A finding of fact by the Board is entitled to the presumption of correctness and, when introduced in a subsequent case, throws the burden of going forward on the opposing party.

3. A deduction of a reasonable allowance for the exhaustion of several patents may be computed by applying the average life of the group to the aggregate March 1, 1913, value of all.

*Jesse I. Miller, Esq.,* for the petitioner.
*P. S. Crewe, Esq.,* for the Commissioner.

Before TRUSSELL, LITTLETON and SMITH.

Petition to set aside a deficiency of $4,664.22 for 1919 and to establish petitioner's right to a deduction for exhaustion of patents.

## FINDINGS OF FACT.

The petitioner was the owner on March 1, 1913, of eleven patents, which had cost $39,325.41. On March 1, 1913, the fair market value of all the patents was $135,000, and the average remaining life of such patents was twelve years, eight months. All of these patents were owned by petitioner during the year 1919.

## OPINION.

STERNHAGEN: The petitioner now seeks for 1919 a similar deduction for the exhaustion of patents to that determined by the Board for 1918 in *Appeal of Union Metal Mfg. Co.,* 1 B. T. A. 395. In its petition it sets forth that the facts in respect of the patents are the same as those found in the earlier proceedings. This the respondent denied. At the hearing the petitioner put in evidence the stipulation which both parties had filed in the earlier proceeding in which, among other things, it was agreed that some of the patents had a fair market value of $135,000 and a remaining life of 10 years 5½ months. The petitioner also put in evidence the Board's findings of fact in the prior case and a copy of the Commissioner's sixty-day notice for 1919. These were received over the respondent's objection.

The respondent put in evidence the taxpayer's return for 1918 and the taxpayer's refund claim for 1918, with supporting papers containing data in respect of the patents in question and showing their cost, dates and alleged value on March 1, 1913. To all this evidence

of respondent the petitioner objected on the sole ground "that the doctrine of *res adjudicata* precludes the introduction of this proof as competent evidence upon this appeal." This objection was overruled.

The argument of petitioner's counsel is devoted to support the point that the value of the patents on March 1, 1913, and their remaining life are matters already formally adjudged by the Board which may not be litigated *de novo* so as to lead to a different determination of fact. The respondent argues that *res adjudicata* is not controlling and that, since the petitioner has not proved the cost and value of each separate patent, no computation of exhaustion can be made and no deduction allowed. To this latter point the petitioner replies that the total value and average life are sufficient to support the statutory deduction of a reasonable allowance.

The argument as to the force of the doctrine of *res adjudicata* is deserving of the most careful consideration. It is an ancient doctrine and has been applied to judicial proceedings with unquestionably salutary effect. That it is a wise rule in many cases can not be questioned. But it is in its nature a doctrine of expediency, devised in the belief that the public interest was better served by prohibiting repetitious litigation and assuming the correctness of a decision once rendered than by persisting in the search for truth and accuracy in each case. It has no absolute sanction in all circumstances and, if it does not fit the system in which it is invoked, its limitations may not be ignored.

This Board is a new creature with a special place in the governmental system of settling disputes. With a function in all respects judicial as to such matters as come within the confines of its powers, it is, nevertheless, nominally outside the judicial system. This was especially so under the Revenue Act of 1924, in effect when this hearing was had. Designated by statute as a "board" and as "an independent agency in the executive branch of the government" with a duty to "hear and determine appeals," through a membership appointed "solely on the grounds of fitness to perform the duties of the office," it appeared to be the final arbiter of all appeals within its limited jurisdiction, for there was no review provided of its determinations. All its cases involved disputes between the taxpayer and the government as to income, profits, estate, and the moribund gift tax. The government was always a defendant. The questions were closely related and an error either in fact or law as to one taxpayer, or as to one year of tax, could affect the tax liability of many others so that it might project itself in an ever-growing circle to bring about great injustice and distort the public revenue. Thus uniformity of precept, which has always been regarded as a desirable achievement, could become an instrument of destruction of justice and defeat its own principal purpose. If the perpetuation of error with such possible

results can be avoided without at the same time involving the system in confusion and inefficiency, no adherence to a doctrine should be permitted to prevent its avoidance. And certainly this must be so at least until it is clearly demonstrated by experience of this special tribunal that the doctrine is indispensable. Its necessity should not be assumed while the Board is still at the threshold of its career.

The doctrine of *res adjudicata*, the matter adjudged, supposes the finality of the determination so that it may put an end to litigation of the same controversy. There is, however, clear evidence in the 1924 Act itself that this was not the legislative intent while that statute was operative. Neither party was bound at his peril to exhaust his proof before the Board. The remedy of trial before the Board before payment was supplemental to the taxpayer's established remedy by suit in court after payment. This added remedy the taxpayer could avail himself of at his pleasure and to the extent he might desire and still retain his preexisting remedy in court. When he sued in court the Board's decision had not the force of a judgment, binding unless reversed, but by section 900 (g), "the findings of the Board shall be prima facie evidence of the facts therein stated." It was clearly contemplated that, so far as all the courts were concerned, the Board's decision and findings of fact should not be *res adjudicata* but should merely be *prima facie* evidence. If for any reason the Board's decision were founded in error, whether by inadequate trial or incorrect determination, correction could be made in the courts. But was this the only method? Was it recognized by Congress that although a party need not be bound by the Board's findings as conclusive after inadequate presentation, the Board itself must be forever prevented from examining the matter? There is no reason for such a theory. While it is most expedient that there should be but one trial before the Board on a single issue and that the parties should abide the judgment in each case, this can not support a system which would make possible the projection of errors into other proceedings.

The circumstances of this case illustrate. the unwisdom of the adoption of *res adjudicata*. In the former case involving 1918 there was presented to the Board for the first time the validity of the Commissioner's general practice as expressed in A. R. M. 209. From the standpoint of the public revenue it was more important that this question should be tested than that a precise valuation should be determined as the basis for exhaustion of the patents. Hence, the facts were stipulated not to the extent that the stipulation was conclusive, but as evidence, each party reserving the right to introduce further proof. Upon this agreed evidence the Board found

the facts and the parties, together with numerous *amici curiæ*, presented arguments on the issues of law. If there be doubt as to the application of *res adjudicata* in the ordinary case where an issue of fact is fully litigated, we should be even more hesitant about applying it to facts thus stipulated for argument's sake.

We conclude therefore that the doctrine of *res adjudicata* did not operate to establish the value of petitioner's patents as found by the Board in the former case. In so far as this conflicts with the decision in *Gilliam Mfg. Co.*, 2 B. T. A. 272, that opinion is overruled.

At the trial the Division left open the door to a full presentation of evidence by overruling some objections and reserving rulings on others. Thus both parties were aware of their opportunity and neither was misled. Both introduced such evidence and we have given it full consideration. The data offered by the Commissioner is sufficient (and there is nothing to impair it) to lead reasonably to the valuation formerly agreed upon, and we have therefore found as a fact that all the petitioner's patents owned on March 1, 1913, had an aggregate fair market value on that date of $135,000.

When the taxpayer put in the findings of fact formerly made by the Board, the facts so found were *prima facie* correct and served as evidence. Without more the petitioner had established its case, for, irrespective of the doctrine of *res adjudicata*, the Board's findings are entitled to the weight of the presumption of correctness. The Commissioner had the burden then of going forward and establishing the preponderance. This he undertook to do but we think without success. From the evidence we have computed the remaining life of each patent on March 1, 1913, and by adding the time remaining for all and dividing by the number of patents, we find an average remaining life of 12 years, 8 months, a rate of exhaustion of 7.9%, or an annual deduction for this year of $10,665.00.

The respondent urges that a deduction can not be computed and hence may not be allowed unless each patent is separately valued. If this were true it would effectively preclude, in many cases, the deduction which the statute contemplates, for the difficulty of patent valuation generally would become an impossibility. Congress is not to be supposed to have allowed a deduction and at the same time intended a method of computation so rarely available as to deprive most taxpayers of the deduction allowed. The statute expressly prescribes a reasonable allowance, and this we think is met by adopting the average method in this instance.

> *Judgment for the petitioner on the issues raised. Redetermination of the deficiency will be made under Rule 50, on 15 days' notice.*