## APPEAL OF CHARLES L. SUHR.

Docket No. 6406.    Decided September 30, 1926.

1. The placing of a value upon certain stock by the District Court in a suit not involving parties before the Board does not render the question of value *res adjudicata*. See *Appeal of Union Metal Manufacturing Co.*, 4 B. T. A. 287.

2. The taxpayer, having a 20 per cent distributive interest in the Henry F. Suhr Trust Estate, and both being on the cash receipts and disbursements basis, is not taxable for the year 1917 on the interest for 1917 on certain bonds received in 1921.

3. Under the circumstances of this appeal, certain director's fees and compensation as managing trustee of the Henry F. Suhr Trust Estate are not taxable under section 209 of the Revenue Act of 1917.

*J. M. Cumming, C. P. A.*, for the petitioner.
*Robert A. Littleton, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income tax in the amount of $9,957.68 for the calendar year 1917.

The questions for determination are (1) the fair market value of certain stock as of March 1, 1913, December 21, 1914, and January 4, 1917, and the consequent gain realized upon the sale of stock in 1917; (2) whether the interest for 1917 on certain bonds received in 1921 is taxable for 1917; (3) whether certain of the taxpayer's income for 1917 is taxable under section 209 of the Revenue Act of 1917.

### FINDINGS OF FACT.

The taxpayer is a resident of Oil City, Pa., and during the year 1917 was an oil refiner.

Prior to March 1, 1913, the taxpayer purchased 964 shares of common stock of the Pure Oil Co. On June 26, 1917, he sold this stock at $24.50 per share. The Commissioner computed a profit on this transaction on the basis of the stock having a March 1, 1913, value of $15.25 per share.

In December, 1914, Henry Suhr, father of the taxpayer, died leaving his property, consisting principally of stocks and bonds, to his wife and children. They entered into an agreement under which they pooled their property under the name of the Henry F. Suhr Trust Estate and designated the taxpayer managing trustee. Under the agreement the income from the trust estate was to be distributed, the taxpayer's distributive share being 20 per cent. Included in the property were 20,500 shares of common stock of the Pure Oil Co. which were turned in to the trust estate on December 21, 1914. On

January 4, 1917, the trust estate acquired 17,106 additional shares of this company. All of this stock was sold on June 26, 1917, at $24.50 per share. The Commissioner computed a gain on the taxpayer's 20 per cent interest in this stock by attributing to it as of December 21, 1914, a value of $15.75, and as of January 4, 1917, a value of $21.75 per share.

About 1915 or 1916 the Henry F. Suhr Trust Estate purchased through New York brokers a number of United States railroad bonds and Japanese bonds which were owned and held in Germany. Due to the War the bonds were not delivered until 1921, and the interest thereon was not received until that year. The books of both the estate and of the taxpayer were kept on a cash receipts and disbursements basis. The Commissioner increased the taxpayer's income for 1917 in the amount of $245, representing his 20 per cent of the interest on these bonds for 1917.

In 1917 the taxpayer was president of the Penn American Refining Co. and the Oil City Oil & Grease Co. and a director of the Pure Oil Co. He was paid a salary by each of these corporations for his services and he also received a salary for his services as managing trustee of the Henry F. Suhr Trust Estate. The amounts received from these sources were as follows:

| | |
|---|---:|
| Oil City Oil & Grease Co. | $3,000.00 |
| Penn American Refining Co. | 7,100.00 |
| Pure Oil Co. | 2,350.00 |
| Henry Suhr Trust Estate | 13,642.35 |
| Total | 26,092.35 |

He devoted practically all of his time to his duties as president of the first two companies above mentioned, which were located in Oil City. He also attended all the executive and directors' meetings of the Pure Oil Co. in Philadelphia.

### OPINION.

MORRIS: The principal item in controversy is the taxable gain derived from the sale of Pure Oil Co. stock on June 26, 1917. The values of this stock as found by the Commissioner and claimed by the taxpayer are as follows:

| Date. | Value found by Commissioner. | Value claimed by taxpayer. |
|---|---:|---:|
| March 1, 1913 | $15.25 | $22.50 |
| December 21, 1914 | 15.75 | 22.50 |
| January 4, 1917 | 21.75 | 24.50 |

The taxpayer offered no evidence to support his claimed value, but called to our attention the decisions of the United States District Court for the Western District of Pennsylvania in the cases of *Phillips* v. *United States*, 12 Fed. (2d) 598; and *Crosby* v. *Heiner*, 12 Fed. (2d) 604. In the *Phillips* case the court found that the March 1, 1913, fair market value of stock of the Pure Oil Co. was $22.50; that the company was in substantially the same financial condition from March 1, 1913, to July 16, 1914; and that on the latter date, July 16, 1914, parties of unquestioned financial ability made an offer of $22.50 per share for the controlling interest in the stock. In the *Crosby* case the court relied on the *Phillips* decision and found the value of the stock of the Pure Oil Co. on July 21, 1913, to be $22.50.

The taxpayer contends that these decisions render the question of value of the Pure Oil Co. stock *res adjudicata.*

Stating the rule generally, it is that in order to render a matter *res adjudicata* there must be identity of the thing sued for, identity of the cause of action, and identity of the parties in the character in which they are litigants. *Washington, etc., Steam-Packet Co.* v. *Sickles*, 24 How. 333, 341, 342; *Lyon* v. *Perin & Gaff Mfg. Co.*, 125 U. S. 698, 700. That identity of the parties is essential is settled by *Aspden* v. *Nixon*, 4 How. 467, where it was held that two suits, one in England, between the executor and administrators of a deceased claimant, acting under English letters, and the other in Pennsylvania, between the executor and another administrator of the claimant, acting under Pennsylvania letters, were suits between different parties, and that neither the decree nor proceedings in the English suit were competent evidence in the American suit.

None of the parties to the present appeal were parties to either the *Phillips* or the *Crosby* case; hence, one of the essentials for the application of the doctrine of *res adjudicata—identity of parties—* is lacking. Consequently, the doctrine is not applicable here and the findings by the court in the cases cited by the taxpayer are not determinative of the facts in this appeal. See also *Appeal of Union Metal Manufacturing Co.*, 4 B. T. A. 287. As no evidence was offered by the taxpayer to prove that the values of the Pure Oil Co. stock on the dates involved—March 1, 1913, December 21, 1914, January 4, 1917—were other than the values found by the Commissioner, we must sustain the Commissioner's valuations and the consequent gain derived on the sale of the stock.

The second question is whether the interest for 1917 on certain bonds received in 1921 is taxable for 1917. The bonds had been purchased in 1915 or 1916, but neither they nor the interest coupons were delivered to the trust estate of which the taxpayer was a beneficiary until 1921. As a result of its inability to present the interest

coupons, the estate did not collect, nor was it able to collect, the interest on the bonds in 1917. In view of these facts, and as both the estate and the taxpayer were on a cash receipts and disbursements basis, we must hold that the Commissioner was in error in adding to the taxpayer's income for 1917 the amount of $245, representing interest on bonds held in Germany.

The sources of compensation paid the taxpayer, aggregating $26,092.35, are set forth in the findings of fact. It appears that the Commissioner has taxed this entire amount under section 209 of the Revenue Act of 1917, which reads as follows:

SEC. 209. That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and under this Act, in lieu of the tax imposed by section two hundred and one, a tax equivalent to eight per centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000; in the case of all other trades or business, no deduction.

The determination of the correctness of the Commissioner's action depends upon what is meant by "trade or business," which, as defined by section 200 of the Act, includes "professions and occupations." The court, in discussing this section in *Lederer* v. *Cadwalader*, 274 Fed. 753, used the following language:

Taxes on income from a "trade or business" clearly mean taxes on the income from the trade, business, profession, or occupation of the taxpayer himself. This is the plain meaning of the statute, and any other construction distorts the simplicity of the language and requires that we read into the language something it does not contain. A single, isolated activity of the character of the executorship of the plaintiff does not constitute a trade, business, profession, or vocation under the facts of this case. We agree with the Secretary of the Treasury and the learned trial judge in the interpretation of this section.

The interpretation of the Secretary of the Treasury referred to is found in article 8 of Regulations 41, as follows:

"Trade" in the case of individuals.—In the case of an individual, the terms "trade," "business," and "trade or business" comprehend all his activities for gain, profit, or livelihood, entered into with sufficient frequency, or occupying such portion of his time or attention as to constitute a vocation, including occupations and professions. When such activities constitute a vocation they shall be construed to be a trade or business whether continuously carried on during the taxable year or not, and all the income arising therefrom shall be included in his return for excess-profits tax.

In the following cases the gain or income is not subject to excess-profits tax, and the capital from which such gain or income is derived shall not be included in "invested captal": (a) Gains or profits from transactions entered into for profit, but which are isolated, incidental, or so infrequent as not to constitute an occupation, and (b) the income from property arising merely

from its ownership, including interest, rent, and similar income from investments except in those cases in which the management of such investments really constitutes a trade or business.

The salaries received from the Penn American Refining Co. and the Oil City Oil & Grease Co. clearly come within the above interpretation. In our opinion, however, the director's fees of $2,350 received from the Pure Oil Co. and the compensation of $13,642.35 as managing trustee of the Henry F. Suhr Trust Estate are not income from "trade or business."

The Commissioner admits error in the inclusion in income of $38.72, representing interest on tax-free covenant bonds, and the amount should accordingly be excluded in the recomputation.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*

MILLIKEN dissents.