In the Matter of the Estate of RICHMOND TALBOT, Deceased.

Surrogate's Court, Orange County, February 9, 1939.

*Sullivan & Cromwell* [*John C. Hover* of counsel], for the trustees.

*Taylor More*, for Minnie E. Koelsch, life tenant.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Walter D. Fletcher* and *Oren Root, Jr.*, of counsel], for Phillips Exeter Academy, remainderman.

*Emmet, Marvin & Martin* [*Langdon P. Marvin* and *Grenville T. Emmet* of counsel], for Harvard College, remainderman.

TAYLOR, S. The will of Richmond Talbot is dated October 15, 1931, and was admitted to probate on June 28, 1932. He died May twenty-sixth in the latter year.

By his will and in the second paragraph a trust of $500,000 was provided for the testator's mother, and of the remainder $125,000 was divided among four individuals and the rest, residue and remainder of the trust fund to two trustees to be held by them and disposed of as part of the residuary estate in accordance with the provisions of article " tenth " of the will. The testator's mother survived him, but has since died. The will then makes a number of bequests of substantial amounts to friends, creates separate and independent trusts for the benefit of six individuals, with the remainder over of the trust principal to the residuary trust. After bequests of personal property and a legacy to a church, the will devised to two trustees the testator's real property known as " Orchard Hill Farm " for and during the life of Minnie E. Koelsch, or until such earlier time as Miss Koelsch should become incapacitated to act, or should advise the trustees in writing that she did not care to act in the operation of the farm, for the benefit of such poor children and other poor and needy persons as in the judgment of Miss Koelsch would be benefited by vacations from time to time on the farm, and by article " tenth " the residue of the estate was devised to the trustees to collect and pay over the income to Miss Koelsch for and during the term of her life, or during such shorter period as was provided in article " ninth," of which income $25,000 per year (and such further sums not in excess of $10,000 per year as she might in writing advise the trustees was in her opinion required for such purpose) should be applied to the maintenance, upkeep and operation of the Orchard Hill Farm, until the termination of the trust, $4,000 per annum to Miss Koelsch as compensation for her services; $500 for clerical and office expenses; $500 to each of two friends for compensation in an advisory capacity to Miss Koelsch, and the remainder of the income to such charitable

institutions and purposes and in such proportions as Miss Koelsch might from time to time determine. Should the farm trust be terminated, for whatever reason, there was provided an annuity of $4,000 for Miss Koelsch if she should be living, and the remainder of the principal should finally be paid over to Harvard College and Phillips Exeter Academy in equal shares.

It was stipulated that the gross estate was over $1,000,000, the net over $700,000 and the principal of the residuary trust $251,000. It was further conceded that the average administrative income was about two per cent. The farm in question has not been sold, Miss Koelsch is still living, she has not advised the trustees to terminate the said trust and the farm is substantially unproductive.

The trustees now have on hand approximately $14,000 income, and desire the instruction of this court as to their rights with respect thereof, and whether the trustees may characterize and use as income " any moneys, stocks or securities received by them." (Will, clause " twelfth.")

Unless the residuary trust principal is considerably increased, the income therefrom will not be sufficient to operate the Orchard Hill Farm as the testator intended.

Clause " twelfth " of the will, which gives rise to this proceeding, is as follows:

" I authorize my Trustees to determine whether any moneys, stocks or securities received by them are to be considered as capital or income (except that stock dividends are to be treated as income) and whether any expenses, outgoings or other payments are to be paid from capital or income, and to determine all questions and matters of doubt arising in the execution of the trusts created by this my Last Will and Testament or any codicil thereto, and I declare that every such determination, whether made upon a question actually raised or implied in the acts or proceedings of such Trustees, shall be conclusive and binding on all persons interested under this my Last Will and Testament or any codicil thereto.

" I further direct that if any property is acquired or purchased for any trust to be established hereunder at a premium, the Trustees shall not be required to set aside any portion of the income of said trust to reduce or amortize said premium.

" I direct that no part of the net income produced by my estate during the period of administration shall be capitalized but that all such income shall be considered as trust income and distributed accordingly."

It is the contention of Miss Koelsch that the $14,000 now in the hands of the trustees and characterized by them as income, must retain that status and be used accordingly, and that because of

the insufficiency of the trust income to maintain and operate the farm as the testator provided administrative capital gains must be considered income.

There can be no cavil with the statement that in the construction of all wills the testator's intention is paramount and must be effectuated unless it runs counter to settled legal principles. ( *United States Trust Co.* v. *Heye*, 224 N. Y. 242; *Matter of Bird*, 241 id. 184; *Matter of Gerry*, 103 id. 445.)

The amount of cash now in hand, and conceded to be income as matters of fact and law, must be used or distributed as income, for the obvious reason that the third paragraph of clause " twelfth " very unmistakably directs that no part of the income produced by the estate during the period of administration shall be capitalized but that all such income shall be considered as trust income and distributed accordingly, and the same conclusion would be reached by reason of section 17-b of the Personal Property Law (in effect not only at the time of decedent's death, but at the time of the execution of the will), there being no express provision in the will otherwise providing. There might be unsurmountable legal obstacles to the capitalization of any income other than that earned during the period of administration, for by section 16 of the Personal Property Law such income cannot be accumulated, except for the benefit of one or more minors in being at the death of the testator, which accumulations must end at or before the expiration of their minority. (*Hawthorne* v. *Smith*, 273 N. Y. 291; *Hascall* v. *King*, 162 id. 134; *Morris* v. *Morris*, 272 id. 110; *Matter of Adler*, 164 Misc. 544; *Matter of McLaughlin*, Id. 539.)

By the same reasoning a direction to pay charges legally ascribed to principal out of income results in income accumulation and would be invalid unless expressly provided for minors. (*Bankers Trust Co.* v. *Moy*, 148 Misc. 38; *Lovett* v. *Gillender*, 35 N. Y. 617; *Kalish* v. *Kalish*, 166 id. 368.)

This prohibition of accumulation of income represents the public policy of the State. (*Bankers Trust Co.* v. *Moy*, 148 Misc. 38.)

That capital gains, meaning the sale of capital assets in excess of appraisal values of cost, are added to and become part of principal, is the settled law of this State. (*Matter of Hagen*, 262 N. Y. 301; *Matter of Gerry*, 103 id. 445.)

The briefs state the will was the product of an experienced draftsman, and there can be no question about that; nevertheless the drafting of clear unambiguous wills is indeed an art, and even the most expert sometimes fail to unequivocally express to others the unquestioned intention of testators.

This precise question seems not to have heretofore arisen in this State, for the very excellent briefs cite only cases bearing upon

the allocation of stock dividends between principal and income. While in the cases cited (*Equitable Trust Co.* v. *Prentice*, 250 N. Y. 1, and *Chase National Bank* v. *Chicago Title & Trust Co.*, 246 App. Div. 201; affd., 271 N. Y. 602) the will clauses were substantially the same as that in the Talbot will, they turned upon the allocation of stock dividends to either principal or income. These cases would seem to be distinguishable from the case at bar, in that stock dividends are *sui generis;* there may be principal in one instance, income in another, and partake of both principal and income under varying circumstances. Said the court in the *Equitable Trust Co.* case, " There is thus a twilight zone. Some things are always income, such as accruing interest or rent. Some are always principal, such as farms or factories or dwellings, held without change of title as part of an original investment, or even shares of stock so held in the absence of a change of form. Some may be one or the other for this purpose or for that. Stock dividends in the true sense, *i. e.,* dividends capitalizing surplus as distinguished from those payable in the stock of a subsidiary * * * have predominantly the quality of an increment to principal, though at times, in furtherance of intention, they have been classified as income." The tests to be applied with respect to stock dividends are (1) the source of the property paid out in the form of an extraordinary dividend, and whether there has been a distribution or dividend of the earnings, profits or accumulations of the corporation; and (2) the language of the will. (*Matter of Roberts,* 117 Misc. 794; *Matter of Davis,* 127 id. 701; *Macy* v. *Ladd,* 128 id. 732.) It was because of this uncertain nature of stock dividends that section 17-a was added to the Personal Property Law in 1922.

The will being the work of a competent draftsman, the provisions of it are to be given their strict legal connotation. (*Matter of Meyer,* 162 Misc. 426; *Matter of Corlies,* 150 id. 596; affd., 242 App. Div. 703; *Matter of Riecke,* 165 Misc. 566.)

It follows as a corollary to the last-mentioned principle that similar expressions in different parts of a will may by examination of all connections determine the meaning in the particular instance, and that, generally, similar language indicates similar intent. (*Matter of Olcott,* 161 Misc. 890; *Matter of McGowan,* 134 id. 409; affd., 228 App. Div. 799; affd., 254 N. Y. 513; *Matter of Corlies,* 150 Misc. 596; affd., 242 App. Div. 703; *Matter of Crespi,* 158 Misc. 383; *Matter of Durant,* 231 N. Y. 41.)

With these principles in mind it is our duty to seek the testator's intention in authorizing his trustees " to determine whether any moneys, stocks or securities * * * are to be considered as capital or income."

" Determine," according to Webster's New International Dictionary (2d ed.), means " to settle a question or controversy about; to decide by authoritative or judicial sentence;  *  *  *  to come to decision concerning, as the result of investigation, reasoning; also, to settle or decide, as by choice of possibilities," and according to Funk & Wagnalls " to ascertain the exact truth about; render the knowledge of clear and accurate."

The word " determine " has been held to mean " to adjudge, to come to a decision, to decide upon after investigation, to ascertain the truth about a transaction, to perform a judicial act." (*Smith* v. *Board of Education*, 174 Ga. 735; 164 S. E. 41.)

In the first paragraph of clause " twelfth " the trustees were given authority " to determine all questions and matters of doubt arising in the execution of the trusts." These words indicate what the testator had in mind, when in the forepart of the same paragraph he authorized his trustees to determine whether any moneys, stocks or securities are to be considered as capital or income. In other words, we cannot assume that this testator intended to violate any of the settled rules of law in giving this authority to his trustees, but rather to authorize them to come to a conclusion upon matters of doubt, whether in the characterization of receipts of money, stocks or securities as capital or income, or in any other connection, and this determination by the trustees upon any question about which there could be reasonable doubt, arrived at genuinely and not arbitrarily (*Matter of Clark*, 275 N. Y. 1: *Matter of Matthews*, 255 App. Div. 80), would be binding upon all persons interested; in fact, that is just what the testator said in the last part of the first paragraph of clause " twelfth." This conclusion that the testator intended to give this power of decision to the trustees in matters of reasonable doubt is further fortified by the testator's very words wherein he declared " that every such determination, whether made upon a question actually raised or implied " shall be conclusive and binding on all persons interested.

Clause " twelfth " is, therefore, construed to make no change in the well-settled rules of differentiation between principal and income; that which is unquestionable income continues to be such, capital gains and corpus continue to be capital and the income now in the hands of the trustees must be distributed as such. But in those cases in which there might be an honest difference of opnion as to whether certain property receipts were principal or income, the trustees may " determine " in which of these categories the particular property receipt belongs, which judgment must be exercised genuinely and not arbitrarily. If this testator had intended that the principal might be invaded for any purpose, that intent

could have been very readily and clearly expressed, and we should not strain for a construction which would permit an invasion of the trust corpus.

Decree may be settled by consent, or on five days' notice.