GOOCH MILLING & ELEVATOR CO. v. COMMISSIONER OF INTERNAL REVENUE.
No. 12372.

Circuit Court of Appeals, Eighth Circuit.
Jan. 29, 1943.

---

D. M. Kelleher, of Fort Dodge, Iowa (F. W. McReynolds, of Washington, D. C., on the brief), for petitioner.

Arthur A. Armstrong, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Newton K. Fox, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This case is before us on petition to review a decision of the Board of Tax Appeals determining a deficiency in income and excess profit taxes of petitioner for the fiscal year ended June 30, 1936, in the respective amounts of $4,731.69 and $1,931.73.

Petitioner is a Nebraska corporation operating flour mills. Following the death of its president on June 11, 1938, an audit of the books showed that all inventories as far back as 1928 had been overstated. The reduced inventory for the fiscal year 1936 was first computed by petitioner's accountants and later accepted by the Commissioner as the basis for determining tax

deficiencies. Petitioner's income tax return for the fiscal year 1936 reported a net loss, but the Commissioner reduced the opening inventory of July 1, 1935, that being the beginning of petitioner's fiscal year, by $237,104.33, and the deficiency resulted primarily from that adjustment. Based on these corrected inventories the petitioner had overpaid its income taxes for all the fiscal years 1928 to 1934 inclusive in excess of $8,000.00. A revenue agent's report for the fiscal year 1935 showed an overassessment of $7,935.58. The Commissioner, based, on this report, determined a deficiency of $4,731.69 in income taxes, and a deficiency of $1,931.73 on account of excess profit taxes for the fiscal year ended June 30, 1936. The taxpayer then filed its petition with the United States Board of Tax Appeals for a redetermination of the deficiencies. In its original petition to the Board the taxpayer alleged that the Commissioner had determined its liability for income and excess profits for the year ended June 30, 1936, to be $14,951.85; that it had paid $8,288.43 of such tax, leaving a balance of $6,663.42; that there was in fact no deficiency, but that it was entitled to a refund of $8,288.43; that in determining the deficiency of $6,663.42 the Commissioner had erroneously reduced petitioner's inventories at June 30, 1935, in the aggregate amount of $237,104.33, which amount was added to petitioner's income for the year ended June 30, 1936, but was not deducted from its income in determining its tax liability for the year ended June 30, 1935. Thereafter the taxpayer filed a motion with the Board requesting leave to file an amended petition which contained allegations that the Commissioner used an inventory of $123,424.25 on July 1, 1935, in computing its taxable net income for the year ended June 30, 1936; that if the same inventory were used June 30, 1935, in computing the taxable net income for the year ended June 30, 1935, and no other adjustments were made there would be a net loss for the year and an overassessment of $11,038.73.

The amended petition sought alternative relief and asked to have the overassessment for the fiscal year 1935 applied as an offset or recoupment against the deficiencies found for the fiscal year 1936. The motion for leave to amend was taken under advisement pending consideration of the case on its merits. The Board entered findings of fact as follows:

"Petitioner is a Nebraska corporation with its principal office in Omaha. Its income tax returns were filed with the collector of internal revenue at Omaha, Nebraska.

"On its income tax return for the fiscal year 1936 petitioner reported a net loss of $5,533.47. As a result of various adjustments respondent determined that petitioner's net income for 1936 was $93,828.83, upon which he computed a tax liability of $14,951.85 of which $8,288.43 has been paid leaving the deficiencies hereinabove set forth.

"The principal adjustment that respondent made related to petitioner's inventories. Petitioner's balance sheet for the taxable year shows an opening inventory of $361,701.88, and a closing inventory of $345,017.43. The deficiency letter shows that respondent reduced petitioner's opening inventory at July 1, 1935 by the following adjustment, 'inventory adjustment, June 30, 1935, $237,104.33.' *The deficiency herein results primarily from this adjustment of petitioner's inventory.*

"Following the death of petitioner's president on June 11, 1938, an audit of petitioner's books revealed that all inventories as far back as 1928 were erroneous. The reduced inventory was first computed by petitioner's accountants and was accepted by respondent as the basis for the present deficiencies.

"Based upon corrected inventories the petitioner had overpaid its income taxes for all the years 1928 to 1934, inclusive, in a net sum in excess of $8,000. The revenue agent's report for the fiscal year 1935 shows an overassessment for the fiscal year 1935 in the sum of $7,935.58, which amount is not subject to refund because barred by the statute of limitations." (Italics supplied.)

The Board held that it was unable "for jurisdictional reasons to grant the relief which petitioner desires" and sustained the Commissioner's determination of deficiencies.

Petitioner seeks reversal on the grounds that the Board erred: (1) in refusing to allow the taxpayer to amend its petition; (2) in holding that it was without jurisdiction to apply the doctrine of equitable recoupment; (3) in denying the relief of equitable recoupment. While the Government in these proceedings has and is asserting a deficiency in the payment of in-

come and excess profit taxes for the fiscal year 1936, it appears without dispute that it has collected and still holds in its hands money paid by the taxpayer in excess of the amount justly due for income and excess profit taxes for the fiscal year 1935. This money, though collected by mistake, is wrongfully withheld by the Government. The overpayment was discovered in connection with an investigation of a claimed deficiency in income and excess profit taxes for the fiscal year 1936. The Commissioner determined upon a correction or adjustment of the inventory of June 30, 1935, and then used it as the beginning inventory of the 1936 tax year. This inventory was reduced by $237,104.33 so as to make it $123,424.25. The taxpayer paid some $8,288.43 of the deficiency determined for 1936 but there remained unpaid $6,663.42, the amount here involved. As to this claimed deficiency the taxpayer insists that it was entitled, under the doctrine of equitable recoupment, to offset the overpayment which it had made on the 1935 taxes. The Board in its findings states that "the deficiency herein resulted primarily from this adjustment of petitioner's inventory". In other words, without such readjustment there would be no deficiency. The adjustment of the beginning inventory for the 1936 taxable year automatically changed the 1935 closing inventory and established the error in the basis for computing the 1935 tax. Having collected and retained the taxes on the basis of the uncorrected inventory it is urged that the Government should not, in determining the question of the amount due for the 1936 taxes, insist on this adjustment and that to do so is violative of fundamental principles of abstract justice. Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Crossett Lumber Co. v. United States, 8 Cir., 87 F.2d 930, 109 A.L.R. 1348. In the first cited case as in the case at bar, the statute of limitations had run against a claim for overpayment of taxes and the question was whether such claim might not be offset against the Government's claim for taxes due. Addressing itself to the inquiry as to what remedy the taxpayer under such circumstances might have, the Court among other things said [295 U.S. 247, 55 S.Ct. 700, 79 L.Ed. 1421]: "In a proceeding for the collection of estate tax, the United States through a palpable mistake took more than it was entitled to. Retention of the money was against moral-

ity and conscience. But claim for refund or credit was not presented or action instituted for restitution within the period fixed by the statute of limitations. If nothing further had occurred, congressional action would have been the sole avenue of redress.

"In July, 1925, the government brought a new proceeding arising out of the same transaction involved in the earlier proceeding. This time however, its claim was for income tax. The taxpayer opposed payment in full, by demanding recoupment of the amount mistakenly collected as estate tax and wrongfully retained. Had the government instituted an action at law, the defense would have been good. The United States, we have held, cannot, as against the claim of an innocent party, hold his money which has gone into its treasury by means of the fraud of their agent. United States v. State [Nat.] Bank, 96 U.S. 30, 24 L.Ed. 647. While here the money was taken through mistake without any element of fraud, the unjust detention is immoral and amounts in law to a fraud on the taxpayer's rights. What was said in the State Bank case applies with equal force to this situation. 'An action will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund. The form of the indebtedness or the mode in which it was incurred is immaterial.' * * * If the claim for income tax deficiency had been the subject of a suit, any counter demand for recoupment of the overpayment of estate tax could have been asserted by way of defense and credit obtained, notwithstanding the statute of limitations had barred an independent suit against the government therefor. This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely".

In Crossett Lumber Co. v. United States, supra, speaking of the doctrine of recoupment, Judge Thomas speaking for this court among other things said [87 F.2d 932, 109 A.L.R. 1348]: "The basis of the doctrine is that principle of natural justice which denounces a claim as unjust, immoral, and fraudulent when the claimant is at the same time wrongfully withholding money which in equity belongs to the other party.

An action to recover taxes is in the nature of an action for money had and received. Although in form it is an action at law, it is governed by equitable principles [citing cases]. In such an action a plaintiff cannot recover unless he can show that in equity and good conscience he is entitled, as against the defendant, to the money. * * * In the case at bar one act, the erroneous valuation of the inventory of November 30, 1926, set in motion a course of events resulting in the erroneous refund to the taxpayer on one hand, and an overassessment in his favor on the other. Had the Government, within the time limited, brought an action to recover the refund, made erroneous by the inventory, the taxpayer could have set up by way of defense its overpayment of income tax of the following year, induced by the same erroneous inventory. There is a direct connection in this case between income taxes paid in successive years based upon a single erroneous inventory as there was between the estate tax erroneously determined and income tax correctly determined on the same item in Bull v. United States, supra. That being the situation, it is immaterial that the parties are reversed and the taxpayer is bringing the suit."

In the instant case the taxpayer is asserting the right to recoup a claim for overpayment of taxes, but the principle applied in the Crossett Lumber Co. case is applicable here. Here, as in that case, there was a correction of an inventory. The inventory serves a double purpose. It fixes stock on hand at the end of one fiscal year and at the same time determines the same fact for the beginning of the ensuing year. The elimination of $237,104.33 from the inventory of June 30, 1935, automatically brought about a deficiency in the income tax for the fiscal year 1936. Whereas, if the taxpayer were permitted to use the original inventory there would be no deficiency for the fiscal year 1936. The same fact that establishes a deficiency for the fiscal year 1936 establishes an overpayment for the fiscal year 1935, and discloses that the Government has in its hands funds of the taxpayer which it would not have had were it not for the overstatement in the inventory. In this situation a manifest wrong results if the administrative tribunal or the court is powerless to prevent an unjust enrichment of one of the parties before it. Recoupment is purely defensive and is equitable in its nature. It reduces the claim affirmatively urged so far as in reason and conscience it ought. Stone v. White, 300 U.S. 643, 57 S.Ct. 610, 81 L.Ed. 858; Williams v. Neely, 8 Cir., 134 F. 1, 69 L.R.A. 232. That the facts and circumstances here disclosed are such as to give rise to the right of recoupment is not seriously questioned. But it is urged that the Board of Tax Appeals is without authority to recognize this doctrine. The Board was created by the 1924 Congressional Act, Revenue Act 1924, § 900 et seq., 26 U.S.C.A.Int. Rev.Acts, page 110, et seq., for "great remedial purposes". Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 291, 79 L.Ed. 623. The 1926 Act, Revenue Act 1926, § 1001 et seq., 26 U.S.C.A.Int.Rev.Acts, page 311 et seq., amended the 1924 Act by making provision for direct appeal from the Board to the Circuit Courts of Appeal, thus eliminating retrial in the District Court required under the 1924 Act. While the Board is not a court it has been called by the Board itself "a new creature with a special place in the governmental system of settling disputes". Appeal of Union Metal Mfg. Co., 4 B.T.A. 287. It has also been referred to as an "independent board of experts to decide impartially between the government and the taxpayer". Avery v. Commissioner, 5 Cir., 22 F.2d 6, 7, 55 A.L.R. 1277. The purpose of Congress in establishing the Board was to bestow at least quasi judicial functions, and to create for the trial of tax cases a body similar to the federal district court, and the Court of Claims. Blair v. Oesterlein Machine Company, 275 U.S. 220, 48 S.Ct. 87, 72 L.Ed. 249; Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985; Garden City Feeder Co. v. Commissioner, 8 Cir., 75 F.2d 804. The Board exercises functions similar to those exercised by a federal district trial court without a jury. Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320. It has authority to redetermine deficiencies of income estate and gift taxes asserted by the Commissioner. While it has no general equitable jurisdiction it has the "power to do full justice to the parties while they are still before it". Helvering v. Edison Securities Corp., 4 Cir., 78 F.2d 85, 91. In the last cited case the court among other things said: "even after a full trial below, an appellate court has the power to remand a case for further proceedings if it has been tried on a wrong theory, Underwood v. Commissioner [4

Cir.], 56 F.2d 67, 73; and it cannot be doubted in view of the purpose for which the Board was established and of the statutes governing its procedure, that it has equal power to do full justice to the parties while they are still before it". It has been held that an administrative tribunal is not deprived of the power to recognize the right of recoupment, because, as above noted, it has appellate powers, judicial in nature. Blair v. Oesterlein Co., supra; Garden Feeder Co. v. Commissioner, supra; Bishoff v. Commissioner, 3 Cir., 27 F.2d 91; Cook v. United States, 5 Cir., 108 F.2d 804; Houston Street Corp. v. Commissioner, 5 Cir., 84 F.2d 821.

In Blair v. Oesterlein the Supreme Court, in speaking of the power of the Board, said [275 U.S. 220, 48 S.Ct. 89, 72 L.Ed. 249] "an examination of the sections creating the board and investing it with power can leave no doubt that they were intended to confer upon it appellate powers which are judicial in character". On appeal from a decision of the Board of Tax Appeals this court may affirm, modify or reverse the decision of the Board with or without remanding the case for rehearing, as justice may require. Hormel v. Helvering, 312 U.S. 552, 61 S. Ct. 719, 85 L.Ed. 1037.

It is, however, the contention of respondent that the power to recognize the doctrine of recoupment as it is presented in the case is lacking because of statutory provisions, and § 272 (g) of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Code, § 272 (g), is relied upon. This provision reads as follows: "The Board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid."

In Dixie Margarine Company v. Commissioner, 6 Cir., 115 F.2d 445, 447, the Court upheld the power of the Board to allow a recoupment based on an overpayment of tax for a prior year, although right to sue to recover same was barred by the statute of limitations. In the course of the opinion it is said "in the present case, the claim for refund and the deficiency assessment had a common origin, namely, the erroneous application of the Oleomargarine Act to petitioner's product, and petitioner's claim is therefore available in recoupment.

"The Board had no occasion to consider whether the statute of limitation affected the availability of petitioner's claim in recoupment. We think it did not". The Board having failed to permit recoupment, its decision was reversed and the case remanded for further proceedings in accord with the views expressed by the Circuit Court of Appeals.

Respondent quotes that part of the above statute which contains the limitation on the power of the Board, but we think it important to observe that the statute specifically provides that the Board "in redetermining a deficiency in respect to any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency". It should be considered as a whole and, if possible, all its provisions given effect. Jones v. York County, 8 Cir., 47 F.2d 837. Unlimited power is vested in the Board to investigate and consider the facts with relation to the taxes of other taxable years in determining deficiencies of any particular year. The limitation is to the effect that the Board shall not "determine" that the tax for any other taxable year has been overpaid or underpaid. Whatever facts with relation to the taxes of other taxable years may be necessary in order to determine the amount of the deficiency may be considered.

The existence of a deficiency for the year 1936 was determined here and could only be determined by considering the tax for 1935. The two years are so tied together, that the deficiency for 1936 depends upon the corrected inventory for June 30, 1935. That inventory, if adopted, automatically reduces the amount of taxes assessable for 1935, and it appears as an incident to this investigation of the taxes for 1936, that the amount collected for 1935 exceeded the resulting deficiency claimed for 1936. The single act of reducing the inventory gave rise to an overpayment for one year and a deficiency in the other. Why should the power be granted the Board to consider "facts with relation to the taxes for other taxable years" unless the results of that investigation may be applied by the Board in determining the amount of the deficiency that should be paid for the year under investigation? The Board did not have to determine the

amount of the taxes for 1935, it only needed to consider the effect of the change in the inventory which normally should have been the same for each year. Its investigation disclosed the fact that the corrected inventory should not in justice be resorted to in redetermining the tax for either of the years 1935 or 1936. Under the circumstances disclosed the Board should prevent respondent from taking advantage of a correction in a bookkeeping entry as the basis for a tax where none was due. As said by Judge Woodrough, speaking for this court in Ruben v. Commissioner, 8 Cir., 97 F.2d 926, 928, "taxation remains a practical matter."

■ In Helvering v. Gordon, Cir., 87 F.2d 663, 666, we said "substance and not form should control in the application of tax laws". A claim for taxes is in the nature of a claim for money had and received, and can be maintained only where the party against whom the claim is asserted has money, which in equity and good conscience belongs to the other party. Here the Government is confessedly, wrongfully, and as the Supreme Court has said "immorally", holding funds belonging to the taxpayer. There was in fact nothing due the Government and if, under such circumstances, the Board is powerless to prevent an injustice, then it must disregard substance and be governed by form.

■ It is inconceivable that the latter part of this statute should be intended to take away from the Board the authority conferred by the earlier provisions. The limitation, we think, should be strictly construed. Ryan v. Carter, 93 U.S. 78, 23 L.Ed. 807; Baltimore & O. S. W. Ry. Co. v. United States, 6 Cir., 242 F. 420. Otherwise the statute repeals itself. It confers broad authority but says such authority shall not be exercised. "Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. * * * Orderly rules of procedure do not require sacrifice of the rules of fundamental justice." Hormel v. Helvering, supra [312 U.S. 552, 61 S.Ct. 721, 85 L.Ed. 1037].

■ The limitation deprives the Board of authority to "determine" that the tax of any other year has been overpaid or underpaid. While the Board may examine thoroughly into the taxes for other taxable years, in doing so, it may not enter any judgment or decision for or against either party as to their liabilities or rights as to other tax years. The statute says it may not "determine" underpayment or overpayment for other years. One of the usual meanings of the word "determine" is: to decide; adjudge; adjudicate on an issue presented; to come to a decision; to perform a judicial act. Tracy v. McIntyre, 29 Cal.App.2d 145, 84 P.2d 526; Glenn v. Mitchell, 71 Colo. 394, 207 P. 84; In re Talbot's Will, 170 Misc. 138, 9 N.Y.S.2d 806. The Board was not required to "determine" the amount of taxes for 1935; it only needed to consider the effect of the inventory which normally should have been used for both taxable years.

■ The Board of Tax Appeals, as well as other administrative tribunals, is of recent origin. It functions in the twilight zone. While it is an administrative agency, Congress has conferred upon it judicial, or at least quasi judicial, authority. Its jurisdiction as affected by rules of procedure was not definitely charted, nor was it clear that it would be bound by judicial precedent. Congress has seen fit to permit it to examine thoroughly into the taxes for other taxable years in order to make a proper redetermination of the taxes due for the year or years at issue, but, out of an abundance of precaution, Congress limited the Board by forbidding it to enter any judgment or decision for or against either party as to their liabilities or rights touching other taxable years. Decisions of the Board may be res judicata on issues tried. A court need not be limited by express statute as to the issues it may hear. Centuries of judicial precedents, and construction compelled by practical necessity, limit its inquiry to the particular issue tendered by the parties. The limitation in this statute is a precaution to a tribunal not strictly judicial that it must not "determine" any tax liability other than for the years to which issue is tendered so as to result in any decision which binds as to those other years.

■ In any event this court may apply the correct rule of law to the facts as was done in Bull v. United States, supra, and Crossett Lumber Co. v. United States, supra. This court has power to affirm, or if the decision of the Board is not in accordance with law, to modify or reverse the decision with or without remanding the case for a rehearing "as justice may require". This we did in Helvering v. Hormel, 8 Cir., 111 F.2d 1, and the Supreme

Court affirmed. Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 721, 85 L.Ed. 1037. In the Hormel case the Supreme Court said "there may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below".

■ In the instant case the doctrine of recoupment was in fact pressed upon the Board. But if we have the right to consider the question if it had not been so presented to or passed upon by the Board, the fact that it was so presented cannot deprive this court of the power to apply it here "as justice may require".

The order appealed from is, therefore, reversed and the cause is remanded to the Board of Tax Appeals for further proceedings consistent herewith.

WOODROUGH, Circuit Judge (dissenting).

It appears in this case that the taxpayer received net income of $93,828.83 for the fiscal year 1936 and that the tax liability to which it became subject under the applicable revenue act was $14,951.83. The return which it made for the year was untrue and the Commissioner was required to and did determine deficiency which properly adjusted the tax to the true income. But the taxpayer appealed from the deficiency determination to the Board of Tax Appeals. It was there established that the income determined by the Commissioner was the true income for 1936 and that the tax was rightly computed, but the taxpayer alleged that it had been overassessed and had overpaid its taxes in former years and it called upon the Board to determine such overpayments and to allow a credit for the amount thereof on the tax for 1936.

The Board is given broad powers to consider such facts with relation to the taxes for other taxable years as may be necessary to correctly determine the amount of a deficiency brought before it for review, but by the statute which created the Board in 1924 and has governed it ever since the Board is expressly prohibited from determining whether or not a tax for any other tax year has been overpaid or underpaid. The statute says that the Board "in so doing [i. e., in considering facts related to the taxes for other taxable years] shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid." 26 U.S. C.A.Int.Rev.Code, § 272 (g). Complying with that statute, the Board refused to consider the taxpayer's claim for credit for overpayment in prior years, as it has consistently done in like cases since its creation, on the ground that it had no jurisdiction.

The words of the statute forbidding the Board "to determine whether or not the tax for any other taxable year has been overpaid or underpaid" are so plain and unambiguous that no court has been called upon to construe or discuss them. The Seventh Circuit in stating the limitation upon the Board's powers stated it simply in the above quoted words of the statute (Commissioner v. Forest Glen Creamery Co., 7 Cir., 98 F.2d 968), and the Supreme Court, with the same provision in mind, merely observed that the Board's jurisdiction is "limited to the determination of the amount of deficiency" and that the Board "is without authority to order * * * a credit." United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, loc.cit. 542, 57 S.Ct. 855, loc.cit 856, 81 L.Ed. 1272.

The statute, the Board's consistent obedience to it for nearly twenty years, the courts' recognition of it and the acquiescence of the profession have established an administrative system where the taxpayer may appeal to the Board from a deficiency found in any year with assurance that the Board cannot use a former year's underpayment to defeat him and where both the taxpayer and the government know that the tax for the year of the deficiency is the only tax the Board can adjudicate. The system is complete, there being other equally certain means, administrative and judicial, to correct over and under assessments or payments in other years.

But of course all the Revenue Acts include limitation of action provisions.

On the review in this court the taxpayer renews its claim of right to have the Board determine the amounts alleged to have been overpaid in former years and credit them on the 1936 deficiency. The arguments in support seem to me to propose a new system for the Board, but on careful consideration of all that has been said neither the new system nor the arguments have appealed to me. Though it is not so stated by it, the petitioner's claim of injustice is really an attack upon the statute of limitations. The taxpayer's untrue returns in

prior years, accepted by the tax collector, caused it to be overtaxed in those years. It had all the time given it by law to obtain correction. But it took no steps within the time allowed. The same limitation applies to all taxpayers alike. It is a lawful limitation, and if unjust to this or any other taxpayer may be changed by Congress but not by the Board or by this court on review of the Board.

The incorrect items of its returns which caused this taxpayer to be overtaxed in years prior to 1936 were the amounts ascribed to inventory, an element in the returns of thousands of taxpayers which is especially subject to erroneous statement. But where overpayment results from the taxpayer's untrue statement the Board cannot say that the government receives the excess upon any continuing trust to offset or credit it on a lawful tax in some later year. On the contrary, it must leave the overpayment to be recovered from the government under the procedure provided by law and not otherwise. It cannot discriminate.

As I see it, the Commissioner having taken the true inventory figure and having rightly computed the taxpayer's true income and lawful tax in the 1936 deficiency, the Board of Tax Appeals was prohibited from finding an overpayment in former years or giving any credit on that account against the deficiency. I would affirm the Board's denial of jurisdiction.