In the Matter of the Estate of FRANCIS D. LECOMPTE, Deceased.

Surrogate's Court, New York County, October 28, 1966.

*Perkins, Daniels & McCormack* (*John M. Whelan* of counsel), for objectant. *Irving Saltzman*, special guardian. *Schaefer & Gallo* for trustees. *Ludwig Teller*, special guardian.

S. SAMUEL DI FALCO, S. In this intermediate accounting by trustees, the income beneficiary has objected to the allocation against income of the Federal and New York State income taxes for the year 1961 and of a portion of the Federal income taxes for the years 1962 and 1963. The factual situation which gave rise to the allocation of the tax is similar to that which prompted the litigation in *Matter of Dick* (29 Misc 2d 648). The difference between the two cases is that in the present case the will grants to the trustees " full power to apportion between capital and income all moneys paid for brokers' commissions, *taxes*, repairs, insurance, assessments and all other expenses incurred on behalf of the trust estate, and the discretion of the Trustees or Trustee hereunder in making such apportionment shall be final ", while in the cited case no such grant of discretion was considered (emphasis added). In that case the court held that the Federal tax statute permitted only one method of computing the income

tax and that this court did not have authority to alter the impact of that tax statute (p. 650). In this case it is the trustees who have shifted the burden of the taxes.

The Principal and Income Act (Personal Property Law, art. 2-A; L. 1965, ch. 336) became effective June 1, 1965, but is applicable only " to any receipt or expense received or incurred after [its] effective date " (§ 27-m). The expenses here involved were incurred prior to that time. The new statute is therefore of significance here only insofar as it purports to codify existing law or to express rules not inconsistent with existing law. Section 27-a sets forth the general rule that a trust " shall be administered with due regard to the respective interests of income beneficiaries and remaindermen " and says that a trust is so administered when expenses are charged in accordance with the provisions of article 2-A. Subdivision 2 says that if " the trust instrument gives the trustee discretion in crediting a receipt or charging an expenditure to income or principal or partly to each, no inference that the trustee has or has not improperly exercised such discretion shall arise from the fact that the trustee has made an allocation contrary to the provisions of this article." Subdivision (4) of section 27-l provides that there shall be charged against principal " any tax levied upon profits, gain or other receipts allocated to principal notwithstanding denomination of the tax as an income tax by the taxing authority."

The Principal and Income Act was recommended by the Temporary State Commission on Estates. (Third Report, p. 410 *et seq.*) The general rule stated in section 27-a is in accord with well-settled authority (3 Scott, Trusts [2d ed.], § 232) and the rule relating to allocation of income tax payments codifies the New York decisions. With respect to the grant of discretion to a trustee to make allocations and the authority of the court to review such discretion, the study of the commission says: " Although no New York cases have been found in support of this statement, a California case (Jacks' Estate, 80 Cal. App. 2d 562, 182 P. 2d 605) holds squarely that in the absence of an abuse of discretion the court will not interfere even though it might have exercised the discretion differently. Subsection (b) is intended to make it clear that this is the rule and that there is no presumption of imprudence in not following the provisions of the act. The trustee would always have to satisfy the court that the allocation was in fact prudent, if it were challenged." (p. 426.)

In *Chase Nat. Bank* v. *Chicago Title & Trust Co.* (246 App. Div. 201, affd. 271 N. Y. 602), the trust agreement gave to the

trustee power to determine how stock dividends should be allocated and also " the power to determine the mode in which the expenses of the administration of the trust should be borne as between capital and income " (p. 206). The only question before the court, however, was the matter of discretion in respect of stock dividends, and though it referred to the other powers, the court decided only that the trustee was authorized by the trust instrument to make the allocation of the stock distribution. However, no doubt was expressed by the court as to the right of the trustee to exercise the other powers to which the court had referred. A similar grant of discretion in respect of stock dividends was upheld in *Matter of Grover* (24 Misc 2d 857, 861).

If there be no New York decision definitively approving a grant of discretion in allocating expenditures, there is ample authority elsewhere. The Restatement of Trusts states the principle that a " trustee may be given discretion in allocating receipts or expenditures to income or principal. * * * The exercise by the trustee of the power thus conferred upon him is not subject to control by the court, except to prevent an abuse by the trustee of his discretion " (§ 233, *Comment p.*) Professor Scott expresses the rule thus: " By the terms of the trust the trustee may be empowered to determine what receipts should be treated as income and what receipts as principal or to apportion receipts between income and principal, and may be empowered to determine what expenditures should be paid out of income and what expenditures out of principal or to apportion expenditures between income and principal. Where such a power is conferred upon the trustee, his determination is controlling unless he has abused the discretion conferred upon him." (3 Scott, Trusts [2d ed.], p. 1775; see, also, Bogert, Trusts and Trustees [2d ed.], § 816, pp. 299–304; 90 C. J. S., Trusts, pp. 644–645; Uniform Principal and Income Act, § 2.) In view of the declaration of principle in our recent legislation, a court would hardly be justified in introducing new limitations on the rule to be applied to past transactions. The court therefore holds that the testator validly conferred discretion upon his trustees to make an equitable allocation of expenses against capital and income and that the trustees have the authority to make such allocation.

It is argued that the word " taxes " in this will was not intended to cover income taxes because this testator died in 1907, prior to the imposition of taxes of the kind here involved. It is patent, however, that the testator was thinking in terms of all expenses and charges which should be apportioned and that he intended to speak in broad general terms that covered all

552

expenses whose impact should be distributed equitably between capital and income.

There can be no doubt that there were sound reasons for an equitable allocation of the taxes here involved. In *Matter of Dick* (*supra*), Surrogate Cox pointed out the inequity of the burden placed upon the trust corpus. He said (p. 650): "The inequities created by the tax statute, as between income and principal interests in a trust, are apparent. The attempt of the statute to avoid the wasting of deductions in those instances where a trust has deductions in excess of gross income is commendable * * * but, in establishing the mandatory priority of the 1954 code, it seems obvious that, under some circumstances, the statute gives an undue advantage to the trust beneficiary and denies the trust remainderman the privilege of deducting amounts which in fact were paid from the trust principal. The trustee has attempted to adjust this inequity in his account and he contends that it is within the equitable powers of this court to sanction his action." Again, the Surrogate referred to the "windfall given to [the income beneficiary] by the tax law" (p. 651) and to the lack of power in the court to deprive her of it. The testator in this case gave the trustees the power to adjust the inequity, and they have attempted to do so.

The parties have addressed their arguments only to the right of the trustees to make any allocation at all. The court holds that they have such power, and the objections to the account are to that extent overruled. No one has discussed the actual method of apportionment or the mathematics of the apportionment. If objectants wish to challenge the actual method of apportionment, they may, within 10 days from the publication of this decision, file an affidavit pointing out any respect in which the allocation is challenged. Thereafter a decree may be submitted settling the account accordingly.