The **FLORIDA NATIONAL BANK AT LAKELAND et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 68–238.

United States District Court,
M. D. Florida,
Tampa Division.

June 1, 1970.

Culverhouse, Tomlinson, Taylor & De-Carion, Jacksonville, Fla., for plaintiffs.

Rodger M. Moore, Atty., Tax Division, Dept. of Justice, Washington, D. C., John L. Briggs, U. S. Atty., Tampa, Fla., for defendant.

## ADJUDICATION

WILLSON, Senior District Judge.

This is a suit for refund of federal estate taxes paid by the plaintiffs for the Estate of Hugh H. Nelson, deceased. The case was called for trial before Chief Judge Joseph P. Lieb of this Court. Pursuant to pretrial order, an extensive pretrial stipulation was filed by counsel for the parties. The stipulation contains the essential facts. In addition Chief Judge Lieb heard two witnesses as offered by plaintiffs. However, there is no issue as to credibility as the witnesses heard by him offered no testimony decisive to the result. Thus the case is ready for decision and has been submitted by counsel on the stipulated facts; and pursuant to the trial order, proposed findings and conclusions and extensive briefs have been filed and considered. There are two issues to be decided: (1) Whether the estate is entitled to the full marital deduction of $109,805.08, as claimed in the tax return; (2) Whether the estate qualifies for the

charitable deduction of $60,723.90, as claimed in Schedule N of the tax return. Counsel agree that under the facts the two issues raise only questions of law. Chief Judge Lieb has assigned this case to the undersigned for final decision.

The Government agrees that there is an allowable marital deduction, but the contention is that this deduction must be based on one-third of the value of decedent's entire taxable estate, which is a lesser amount than the sum claimed in the tax return.

As to the claim for charitable deduction, the Government's position is that the corpus of the trust estate is presently unascertainable, and thus does not qualify for the charitable bequest deduction.

Plaintiffs' proposed findings numbered 1 through 12 inclusive and a portion of No. 13 are based on the stipulation and are adopted as the findings of the Court, and they follow:

## FINDINGS OF FACT

1. The plaintiffs are the Florida National Bank of Lakeland and J. B. O'Neill, as co-executors under the last Will and Testament of Hugh H. Nelson, deceased, and the defendant is the United States of America. (Ex. 1, Pretrial Stip., pp. 4 & 5).

2. This action was brought pursuant to the laws of the United States and the Court has jurisdiction of this action under Title 28, United States Code, Section 1346(a) (1). This is an action for the refund of Federal estate taxes and interest paid by the plaintiffs for the Estate of Hugh H. Nelson, deceased, in the total amount of $20,159.85, plus interest as provided by law. (Ex. 1, Pretrial Stip., p. 1).

3. Hugh H. Nelson died testate on August 14, 1965, survived by his wife, Charlette A. Nelson, age 90; and three children, Marjorie Nelson Allman, age 59; Lionel W. Nelson, age 53; and Evelyn Nelson O'Neill, age 51. (Ex. 1, Pretrial Stip., p. 4).

4. A Federal estate tax return (Form 706) for the Estate of Hugh H. Nelson,

deceased, was timely filed by the plaintiffs, and the taxes reflected on that return as being due were paid. (Ex. 1, Pretrial Stip., p. 4).

5. Included on that return as Item 2 on Schedule A was a parcel of real estate described as a commercial building and lot reported at a value of $26,000.00. The parties now agree that the correct value of that real property at the valuation date for estate tax purposes was the amount of $28,000.00. (Tr. p. 4; Ex. 1, Pretrial Stip., p. 4).

6. The estate tax return reflected a claimed marital deduction in the amount of $109,805.08, made up of the following items:

### ESTATE TAX VALUES

| Item | No. of Shares<br>At Date of Death | | Value<br>Alternate<br>Valuation Date | Value<br>Date of Death |
|------|------|------|------|------|
| (a) | 1340 | Dividend Shares, Inc. | $ 5,512.89 | $ 5,648.10 |
| (b) | 407 | Group Securities, Inc. | 6,709.78 | 6,636.14 |
| (c) | 100 | Jefferson Standard Life Ins. Co. | 5,032.50 | 6,282.50 |
| (d) | 1128 | Keystone Custodian Fund K-2 | 9,502.39 | 7,525.08 |
| (e) | 1450 | Keystone Custodian Fund S-2 | 22,882.39 | 22,316.75 |
| (f) | 395 | Keystone Custodian Fund S-3 | 9,800.13 | 8,008.19 |
| (g) | 1746 | Television Electronics Fund, Inc. | 20,298.73 | 16,774.91 |
| (h) | 200 | Montgomery Ward Company | 7,662.50 | 6,725.00 |
| (i) | 283 | Pacific Power and Light Co. | 6,968.88 | 7,623.31 |
| (j) | 200 | Texas Eastern Transmission Co. | 4,245.00 | 3,895.00 |
| (k) | 100 | West Point Pepperell, Inc. | 5,270.00 | 4,310.63 |
| (l) | | Cash | 9.26 | 9.26 |
| | | SUBTOTAL PROBATE ASSETS | $103,894.45 | $ 95,754.87 |
| (m) | 200 | Ramada Inns, Inc. | 1,400.00 | 1,400.00 |
| (n) | 100 | West Point Pepperell, Inc. | 4,310.63 | 4,310.63 |
| (o) | | Auto – 1957 Rambler | 100.00 | 100.00 |
| (p) | | Household Effects | 100.00 | 100.00 |
| | | TOTAL | $109,805.08 | $101,665.50 |

(Ex. 1–A of Pretrial Stip., Ex. 1).

———————◆———————

7. The decedent's wife, having elected to take against the Will, claimed her dower rights. (Ex. 1, Pretrial Stip., p. 4). The items shown as (a) through (l) of Paragraph 6 above passed to the decedent's wife pursuant to a Judgment for Dower and an Amended Judgment for Dower issued by the Judge of the County Judge's Court in and for Polk County, Florida. (Ex. 2) Of the remaining items, items (m) and (n) passed by right of survivorship.

8. All of the items passing to the decedent's wife, as listed in paragraph 6 above and in Schedule M of the estate tax return (Ex. 1–A of Ex. 1), passed absolutely to the decedent's wife. These items were valued at the same amounts both in computing the marital deduction and in determining the decedent's taxable estate. (Ex. 1–A of Pretrial Stip., Ex. 1).

9. The defendant determined that the marital deduction was allowable only to the extent of one-third of the decedent's gross estate as computed by the defendant, less excluded items, plus jointly held properties. Based on this computation,

the defendant disallowed $7,315.08 of the claimed marital deduction, ignoring that as a matter of fact and law, properties listed in paragraph 6 above, having total estate tax value of $109,805.08, passed to the decedent's wife by reason of his death. (Ex. 2 and Ex. 4–D of Pretrial Stip., Ex. 1).

10. As previously indicated, the widow of Hugh H. Nelson, the decedent, dissented from the Will and timely elected dower under the provisions of section 731.34 of the Florida Statutes, F.S.A. In addition, she received a widow's family allowance in the total amount of $1,-200.00, which does not qualify for the marital deduction. The decedent's residence (Schedule A, Item 1 of the Estate Tax Return) was homestead property, which also does not qualify for the marital deduction. (Ex. 1, Pretrial Stip., p. 4).

11. The decedent's Will contained a bequest whereby the residue of the estate was placed in trust with the income to be paid: first, to his wife to the extent of $175.00 per month for life; second, for a music scholarship of $500.00 per year and; third, the balance to be equally divided between his living children. Upon the death of his wife and children, the principal of the trust is to be disbursed to charities qualifying under the charitable bequest sections of the Internal Revenue Code of 1954, in particular Section 2055. (Ex. 1, Pretrial Stip., p. 6 and Ex. 2–B thereof).

12. The parties have agreed that a charitable bequest deduction equivalent to .38254 percent of the residual estate, as finally determined, is allowable; provided the Court finds that the amount of such bequest is ascertainable as a matter of fact or law. (Ex. 1, Pretrial Stip., p. 6).

13. The plaintiffs claimed a charitable deduction of .38254 percent of the residual estate, less certain automatic adjustments, said deduction amounted to $60,723.90. The computation of the present value of the residual estate passing to charities was based on bona fide actuarial computations and * * *

## DISCUSSION OF LAW

### I. FIRST ISSUE—MARITAL DEDUCTION

As plaintiffs' counsel has clearly stated, the allowable marital deduction is based upon the value reported in the decedent's estate tax return of the assets passing to the decedent's spouse under state law as dower or otherwise.

Section 2056, Internal Revenue Code of 1954, provides, in part, as follows:

"(a) *Allowance of Marital Deduction.* —For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."

The limits imposed by subsections (b), (c) and (d) are not applicable to the issue in this case. The above statute clearly sets out three statutory prerequisites to the qualification of a marital deduction.

First, a property interest must pass at death to the surviving spouse. There is no question that the assets making up the dower distribution passed to the surviving spouse in this case, either by operation of law, or by order of the Probate Court.

Second, the property interests so passed were included in the decedent's gross estate. This factor is self-evident, and is confirmed by a mere cursory review of the estate tax return.

Third, the claimed deduction cannot exceed an amount equal to one-half of the value of the decedent's gross estate. This factor is also indisputable.

It is noticed that the marital deduction as claimed is made up of the specific items of personal property (stock certificates) set apart to the widow by the Probate Court under Paragraph 6 of the

findings, plus the Ramada Inns, Inc., stock, the West Point Pepperell, Inc., stock, the 1957 Rambler, and the household effects.

The contention of the Government is stated as follows, p. 8 of its brief:

"As is apparent, the election of dower by a widow under Florida law fixes her interest, which is an undivided one-third share in all property which was in the estate at the time of the husband's death. In short, whatever the valuation of the estate's assets for federal tax purposes under an alternate valuation date election, and regardless of whether or which specific assets may in fact be distributed to the widow in satisfaction of dower, her dower interest is a fixed fractional share of all the assets.

"Clearly, therefore, in light of the provisions of Sections 2032 and 2056 of the Code and the Regulations thereunder, the valuation of the widow's dower interest must remain in constant proportion to the value of the entire estate subject to dower for the purposes of the allowable marital deduction. The value of specific estate assets may fluctuate up or down depending upon the particular valuation date applicable by reason of sale or distribution, but the widow's dower interest must remain in ratio to the value of the entire gross estate as determined."

■ But the dower interest under Florida law is one-third of the property passing to the widow which was owned by the husband individually. The claim of dower does not reach jointly-owned or entireties-owned property held by the husband and wife at the date of the husband's death. But such property under the statute 26 U.S.C. Section 2056(e), *Definition,* is considered as passing from the decedent to his wife and may be included in computing the amount of the marital deduction. By using the value at the alternate date, that is, one year from death, the plaintiff reaches the $109,805.08 amount as the marital deduction.

■ As this Court sees it, plaintiffs assert that under Florida law the widow owns individually the Ramada Inns, Inc., and the West Point Pepperell, Inc., stocks by virtue of the title to those stocks being in the names of both the husband and the wife at the time of death. These two stock certificates were not claimed as dower, but nevertheless passed to the widow, and thus under the statute qualify as part of the marital deduction. The only difference between the parties in this phase of the case is that the Government would have the value of the two stocks added to the dower property and made a part of the gross estate thus giving the widow one-third of the total rather than allowing the aggregate value of the specific items claimed by the widow. The fact that the specific assets appreciated between the date of death and the alternate valuation date is of no significance as the executors are permitted to choose the alternate date. The alternate date in this instance increased the value of the gross estate, but by the same token increased the amount of the marital deduction. It has, of course, been admitted that neither the homestead property nor the $1,200.00 widow's family allowance qualifies for the marital deduction, and these two items were not included in the tax return marital deduction claim. Thus, the amount claimed as the marital deduction appears to this Court to be correct under the facts in this case except for the two $100.00 items, that is the value of the 1957 Rambler and the household effects. Schedule E of the Return lists jointly-owned property which are the items (m) and (n) in Finding 6. But the two other items of $100.00 each under (o) and (p) in Schedule F were owned by the decedent and have not passed to the widow under the probate decree nor by any title instrument. Thus the conclusion is that marital deduction must be $200.00 less than the amount claimed by the plaintiffs.

Many decisions have been cited by counsel for the parties, but Murphy v. Murphy, 125 Fla. 855, 170 So. 856, rules

that the one-third dower interest is measured by the gross estate as it existed at the date of death. Dougherty v. United States, 6 Cir., 292 F.2d 331, among others holds that assets passing to the decedent's spouse under a probate court order qualify for the marital deduction.

## II. SECOND ISSUE—THE VALUE OF THE CHARITABLE REMAINDER INTEREST WAS NOT ASCERTAINABLE AT DATE OF DECEDENT'S DEATH

With respect to the second issue, the Will reads, Paragraph IV, Joint Exhibit 2–B, in part:

"I give, devise and bequeath all the rest, residue and remainder of the property which I may own at the time of my death, both real and personal, and of every kind and description, wherever the same may be situated, to The Florida National Bank at Lakeland, a Florida banking corporation, to have and to hold the same in trust as Trustee, for the following uses and purposes:

"(a). Pay over to my dear wife, Charlotte A. Nelson, the sum of One Hundred Seventy-Five Dollars ($175.00) per month from the income of my said trust estate * * *

"(b.) I direct my Trustee from the income and capital gains of my trust estate, to award annually one Five Hundred Dollar ($500.-00) Scholarship * * *

"(c.) I direct my Trustee to divide the balance of the income that may accrue to my estate by reason of the capital gains or otherwise into three (3) equal portions, and to pay one portion to each of my three children, * * *."

Upon the death of his wife and children, the testator directed that the principal of the trust is to be disbursed to certain charities. It has been agreed that the charities qualify under the

Internal Revenue Code of 1954 and particularly Section 2055. At the outset it is to be noticed that without the express provision that capital gains be allocated to income the Uniform Principal and Income Act of Florida would require that all capital gains would be allocated to corpus. Florida Statutes, Chapter 690, (1967), F.S.A.

The general principles with respect to the second issue are well summarized in the Government's brief as follows:

Section 2055(a) of the Internal Revenue Code of 1954, Appendix, *infra,* provides for the deduction from a decedent's gross estate of the amount of all bequests to or for the use of qualified charities. But if a trust is created for both a charitable and a private purpose, as in the present case, a deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the non-charitable interest. Treasury Regulations on Estate Tax (1954 Code), Section 20.-2055–2, Appendix, *infra.* Where a trust permits the invasion of corpus on behalf of the life beneficiaries to the detriment of the charitable remainders, the matter of a charitable deduction is dependent upon the extent of the power to divert. And it is well settled that this essential test of deductibility is to be determined upon the basis of the governing instrument—in this case the decedent's will. See, Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Merchants National Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Henslee v. Union Planters National Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949). A second and separate essential test of deductibility under Section 20.2055–2 of the Regulations is whether the possibility of invasion is so remote as to be negligible. However, it is clear that the question of the power of a trustee to invade corpus, under the provisions of a will, precedes and overrides the question of

the likelihood of exercise of the power of invasion. Only if, under the terms of the will, the first standard is met, is it necessary to consider the secondary question of the likelihood of invasion. Indeed, where the initial criterion has been absent, the deduction has been disallowed notwithstanding the fact that the likelihood of invasion may have been minor. See Merchants National Bank v. Commissioner of Internal Revenue, *supra;* Henslee v. Union Planters National Bank, *supra;* Union Trust Co. v. Tomlinson, 65–1 U.S.T.C. par. 12,282 (M.D. Fla., 1964), affirmed on this issue, 355 F.2d 40 (C.A. 5, 1966); State Street Bank and Trust Co. v. United States, 313 F.2d 29 (C.A. 1, 1963).

The Supreme Court set down the broad guidelines for interpreting the predecessor to Section 2055 when it stated, in Merchants National Bank v. Commissioner of Internal Revenue, *supra,* 320 U.S. p. 261, 64 S.Ct. p. 111:

> For a deduction under § 303(a) (3) to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuation on which the market place might be willing to act are not sufficient. Cf. Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 348, 72 L.Ed. 667. Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable. Cf. Bank of America National Trust & Savings Assn. v. Commissioner of Internal Revenue, 126 F.2d 43 (C.C.A.)

And the law is fairly stated in 4 Mertens, Law of Federal Gift and Estate Taxation, Sec. 28.37, pp. 397–398, as follows:

> Where receipt by the charity of its interests is subject to a power of invasion for the benefit of private persons, the determination as to whether any portion of such interest is assured is controlled primarily by two subordinate tests: (1) whether by the terms of the trust or other instrument of transfer the trustee's or beneficiary's power of invasion is limited by definite and ascertainable fixed standards capable of being stated in terms of money (such standard must, in the first instance, be determined by reference to the will); and (2) whether the extent of anticipated invasions, as of the time of the transfer in trust, and the effect thereof on the present value of the power of invasion, under the circumstances, is clearly demonstrable. The second requirement cannot stand independently of the first; if there is not a qualifying fixed standard the deduction is not allowable irrespective of the probability or improbability of actual invasion for private use. Conversely, once the fixed standard is established, the second test will show whether it is possible to factually establish the portion which is assured to the charity as free from the contingency of invasion for private use.

See also, Paul, Federal Estate and Gift Taxation (1946 Supp.), Sec. 12.26, pp. 436–437; Lowndes and Kramer, Estate and Gift Taxes (2d ed., 1962), p. 483.

Moreover, in determining whether a power of invasion meets the requisite ascertainable standard, it is clear that the testator's intent is to be gauged by the words of the instrument as actually written. Peoples Trust Co. of Bergen County v. United States, 412 F.2d 1156 (C.A. 3, 1969).

The Judges of this Court have had similar issues. Chief Judge Lieb in Union Trust Co. v. Tomlinson, 63–113 Civ.T., ruled that the *Sutherland* Trust did not qualify for the charitable

deduction and was affirmed in Morgan v. United States, 355 F.2d 43 (C.A. 10, 1966). Judge Krentzman applied the same statute in the *Connelly* Estate, 68–344 Civ.T., but under the evidence presented to him ruled that the charitable bequest deduction was permissible. Two recent decisions have been examined: (1) Estate of Lillie MacMunn Stewart, deceased et al. v. Commissioner of Internal Revenue, 52 T.C. 830, 1969. The Tax Court allowed the claimed deduction largely because of the New York law and the strict local regulations relating to trust estates and discretion of the trustee. (2) Miami Beach First National Bank v. United States, District Court, So.Dist.Fla. Case Number 68–535—Civ.JE, 9/2/69. Judge Eaton refused to equate the power to invade the corpus with the power to allocate capital gains distributions, and under the facts presented allowed the charitable deduction. The cited decisions, of course, discuss the statute and the regulations. But the decisions just cited were made on factual situations which are nowise similar to the evidence in the instant case. The result is that none of the decisions mentioned are precedents controlling the decision in the present problem.

Section 2055 of the Internal Revenue Code of 1954 permits a charitable estate tax deduction, and the Treasury Regulations of Estate Tax (1954 Code), 26 C.F.R. Sect. 20.2055–2, has application to the instant case because the trust in the Nelson Will is not exclusively for charitable purposes. The regulation reads:

"(a) *Remainders and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest."

Turning to the Nelson Will, it is noticed that there is no direction whatsoever to the trustee as to the type of investment. Before Chief Judge Lieb the testimony of an officer of the trustee bank indicated that the only restriction on the trustee with respect to investments was the "prudent man principle." He said Florida law permits investment in mutual funds among other securities. However, no mutual fund stocks were in the trust portfolio at the time the witness testified.

The Will mentions "income" three times in Paragraph IV. Under IV(a.), the word "income" is used alone. Under IV(b.) the language is "from the income and capital gains of my trust estate." Under IV(c.), the language is "divide the balance of the income that may accrue to my estate by reason of the capital gains or otherwise into * * *." Thus it is certain that the testator by his language equated income with capital gains. The mandatory direction to the trustee is that all income, including the capital gains income, be paid over to the life beneficiaries. The testimony of the trust officer is that the usual practice is when capital losses occur in the same year that capital gains occur the gains will offset the losses. However, if it was a net loss, the loss would be carried forward to the next year just as is done in income tax accounting. The witness stated that in such a situation a capital loss carried forward would be offset by any capital gains in the next year "Until we reached the point that it was all washed out." The witness also stated that "Capital gains is the difference between the cost or other basis over the sales price." (Tr. 29–30).

It is not overlooked that the trial record reveals testimony by the lawyer who drafted the Nelson Will. This testimony was directed to the decedent's understanding of the language used in the Will, especially with respect to the contention of the plaintiffs that the Will should be so construed that capital gains income means *net* capital gains so that the distribution of income by the trustee would be from the net of all gains and losses arising from the sale of capital

assets. The Government counsel objected to the testimony of the lawyer who drafted the Will. This objection must be sustained and the testimony adduced disregarded. It is Hornbook law that a Will must be construed from the four corners of the instrument. Applying the general rule, the language "capital gains" and "income" are words of ordinary meaning. Plaintiff has cited Sargent Land Co. v. Von Baumbach, 207 F. 423 (Minn.D.C.1913), where the statement by the district judge is: "In ordinary speech people recognize a difference between capital and income." In 42 C.J.S. Income p. 532, it is stated that "the general rule is that gains resulting from the purchase and sale of securities are accretions belonging to the principal, rather than income."

 Decedent had a good sized investment portfolio. His widow claimed the majority of the stocks under her dower right. But the decedent must be held to have understood the language that he used in his Will. The difficulty with plaintiffs' contention that the charitable remainder is deductible is that under the clear and explicit language the corpus of the trust must bear the losses. There can be no allocation of capital gains to make up losses under this Will. Of the many decisions cited by counsel for these parties, no case touches the exact evidence presented in the instant problem. To hold for the plaintiffs requires this Court to rule that it is a negligible proposition to assume that the trustee will incur losses in the investment portfolio. The life tenants are to receive their income quarterly. Any one of them on the sale of a security in which a capital gain is realized can demand a share of the capital gain.

 This decedent created a testamentary trust. He knew the trustee was to invest his money. Thus in this situation when the corpus bears the losses, the text writers and the regulations hold that the directive that the trustee pay to the non-charitable life beneficiaries capital gains that accrue to the trust renders the value of the charitable beneficial interests under the testamentary trust unascertainable and therefore nondeductible. The principle as stated is believed to be correct.

It seems only common sense to realize that in an investment portfolio from time to time losses in specific stocks will occur. Losses are as common as gains if not more so. Securities are instruments issued by corporations in large part, and corporations will merge, business may be bad, reorganizations occur, and many other situations develop which require the sale of an investment security resulting in a loss. There is simply no way to determine that the charitable beneficiaries will receive the $60,723.90 at the expiration of the three life estates.

## CONCLUSIONS

1. This Court has jurisdiction of this cause and the parties under Title 28, U.S.C. Section 1346(a) (1), as this is a claim for refund of federal estate taxes and interest paid.

2. Under the fair preponderance of the evidence and the law, plaintiff is entitled to a refund on the amount of the marital deduction claimed but disallowed as set forth in the stipulation less the two items aggregating $200.00 as heretofore mentioned.

3. Plaintiffs have failed to show by a fair preponderance of the evidence and the law that they are entitled to recover any part of the amount claimed as a charitable deduction in the tax return, and therefore the claim for $60,723.90 with interest is denied.

Other conclusions of law will appear in the discussions of law heretofore mentioned and as permitted under Rule 52 it is unnecessary to separately state them.

Counsel will in due course agree on the amount of the judgment to be entered in favor of plaintiffs and will then submit an order for final judgment embracing both issues.