ESTATE of Lillie MacMunn STEWART, Deceased, W. Alan Henderson, Executor

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 18947.

United States Court of Appeals, Third Circuit.

Argued Nov. 20, 1970.

Decided Jan. 5, 1971.

Rehearing Denied March 8, 1971.

Richard C. Turrone (argued), San Jose, Cal., for appellant.

Robert P. Scheinblum (argued), Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., Los Angeles, Cal., for plaintiff and appellee.

Before CHAMBERS and MERRILL, Circuit Judges, and CONTI, District Judge.

Paul M. Ginsburg, Tax Div., Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Michael L. Paup, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Edwin M. Dotten, Jr., Hartlaub, Braun, Thorn, Dotten & Skidmore, Summit, N. J. (Lemuel Skidmore, Summit, N. J., on the brief), for appellee.

Before HASTIE, Chief Judge, and McLAUGHLIN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Because private philanthropy is so deeply rooted in our society, Congress has been persistently confronted with the problem of resolving what types of incentives are appropriate in the Federal tax system for charitable contributions. A traditional incentive has been the allowance of a deduction in the computation of income, estate, and gift taxes for amounts given to charities.[1]

The form in which gifts may be made so as to qualify under the estate tax deduction provision is quite broad.[2] Often such bequests are made in the form of charitable remainder trusts, allowing the decedent to provide for non-charitable beneficiaries, perhaps for their lives, before the charitable remainderman receives anything. To determine the proper deduction in such cases, the Estate Tax Regulations ("the Regulations") provide for a deduction if (1) the charitable interest is "presently ascertainable, and hence severable from the non-charitable interest," and (2) viewing the circumstances as of the date of decedent's death, "the possibility that the charita-

---

[1]. See §§ 170, 2055, 2522 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 170, 2055, 2522 ("the Code").

[2]. § 2055(a) *"Transfers for public, charitable, and religious uses.* For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers * * * (2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *".

ble transfer will not become effective is so remote as to be negligible."[3]

The question presented on this appeal is whether the broad administrative powers here granted to the trustee by the trust instruments precluded the value of the charitable remainders of the trusts from being "presently ascertainable" at the decedent's death. Only if it is decided that the value was presently ascertainable need the further question regarding the likelihood of exercise of the power be considered.[4]

The relevant facts in this case are not in dispute. On May 24, 1960, Lillie MacMunn Stewart created two trusts, naming what is now the Manufacturers Hanover Trust Company as sole trustee. For purposes here pertinent, the two trust instruments were identical providing that the income of the trusts be paid to decedent for life, then to her sister for life, and then to her brother-in-law for life. Upon the death of the last surviving life tenant, the corpus was to be distributed to named charities which meet the requirements of § 2055(a) (2) of the Code (see footnote 2). The trust agreements provided in part as follows:

"4. The trustee shall have the following powers, authority, and discretion, which it may exercise in its sole and absolute discretion whenever and as often as it may deem advisable without application to or approval by any Court, namely:

To retain any property herewith or hereafter placed in trust, and to receive, invest in and retain stocks (whether common or preferred), bonds, securities, undivided interests in any real and personal property, shares or interests in investment companies or investment trusts, any Common Trust Fund maintained by the corporate trustee, and any property, real or personal, foreign or domestic,

whether or not wasting assets, without any duty to diversify and without any restriction placed upon fiduciaries by any present or future applicable law, rule of court or court decision, and from time to time to hold property uninvested without liability for interest or loss of income. * * *

To apportion to principal or to income or in part to both any rents, dividends, interest or other income accrued or declared, but unpaid, in respect of any property at the time of the receipt of such property by the trustee, any dividend of whatever kind or nature, any property received upon any exchange, reorganization, recapitalization, consolidation, merger or dissolution, any rents, royalty or payment received in respect of any so-called 'Wasting asset' or so-called 'unproductive property' or any other receipt whatsoever, to determine whether or not to amortize in whole or in part the premium at which any property may be received or held or any depreciation on or any expense in connection with any property, real or personal, to discontinue any sinking fund or depreciation or depletion reserve and to treat the same as income in whole or in part and to pay from principal or income or in part from both any deficit from the operation of any improved or unimproved property or any charge against the trust estate, to distribute property determined to be income and to hold property determined to be principal without liability to any person then or thereafter interested in the trust estate, upon the termination of any trust to pay any accrued rents, dividends, interest or other income, to the next estate without apportionment and in connection with the foregoing to follow or depart in whole or in part from any rule of law; provided

---

3. See Estate Tax Regulations § 20.2055–2 (a) and (b) (Treasury Regulations 26 C.F.R. § 20.2055–2(a), (b)).

4. *See generally*, 4 Mertens, Law of Federal Gift and Estate Taxation, § 28.37 at pp.

397–398 (Moskowitz Ed. 1959); Taggart, Charitable Deductions for Transfers of Remainder Interests Subject to Invasion, 21 Tax.L.Rev. 535, 562–3 (1966).

that nothing herein shall authorize an illegal accumulation of income.

In all matters to administer and invest the trust estate as fully and freely as an individual owner might do, without any restrictions to which fiduciaries are ordinarily subject, except the duty to act in good faith and with reasonable care.

12. This indenture shall be construed, regulated, and administered in all respects in accordance with the laws of the State of New York, except as otherwise herein expressly provided."

Because the decedent retained a life estate in the two inter vivos trusts, the trusts were included in her gross estate under § 2036 of the Code when she died on May 6, 1964. The estate claimed a charitable deduction for the present value of the trust remainders under § 2055 of the Code. The Commissioner, however, asserted that the broad administrative powers quoted above rendered the deduction unavailable because the charitable interests were not "presently ascertainable" and there was no assurance that the charities would receive the bequest. The Tax Court upheld the charitable deduction in an opinion reported at 52 T.C. 830 (1969), and the Government appealed.

This case presents the first instance in which a Court of Appeals has decided whether broad administrative powers in a charitable remainder trust may allow a trustee such authority to deplete corpus in favor of non-charitable life beneficiaries so as to make the value of the gift not "presently ascertainable."[5] Such problem will not arise for estates subject to the Tax Reform Act of 1969 because §§ 201(d), (e) and (g) of that Act require that a trust pay either a fixed dollar amount or a fixed percentage of net fair market value of the trust assets to the life beneficiaries before the charitable remainder is eligible for the deduction.[6]

The Supreme Court has frequently scrutinized powers to invade corpus, holding that the *possibility* of invasion, not subject to some "ready standard," is sufficient to disqualify a charitable deduction. Indeed, in Henslee v. Union Planters Nat. Bank, 335 U.S. 595, 69 S. Ct. 290, 93 L.Ed. 259 (1949), the Court found the chance of invasion on behalf of an 85-year-old widow with independent income and no dependents to be "remote", but held that a power to invade corpus for the woman's "pleasure, comfort and welfare" was not subject to a standard sufficiently definite to make the amount of the charitable remainders a presently ascertainable sum.[7] The *Henslee* decision was based on an earlier case which similarly had held that a power to invade "for the comfort, support, maintenance and/or happiness of my * * * wife," the trustee to exercise his discretion "with liberality," was too

5. At least four similar cases are presently pending before the Courts of Appeals: Gardiner v. United States, F.Supp. (D. Ariz.1969) ; First National Bank in Palm Beach v. United States, F.Supp. (S.D. Fla.1969) ; Miami Beach First National Bank v. United States, F.Supp. (S.D. Fla.1969) ; Peoples Trust Co. of Bergen County v. United States, 311 F.Supp. 1197 (D.N.J.1970). The same question was considered in Bankers Trust Co. v. United States, 308 F.Supp. 545 (S.D. N.Y.1970), but the Government has appeared only on other issues. *See also* Florida National Bank at Lakeland, 313 F.Supp. 1072 (M.D.Fla.1970).

6. See Pub.L. 91-172, 83 Stat. 487, 560- 565 (codified in §§ 642(c) (5), 664, 2055

(e) of the Internal Revenue Code of 1954). *See also* H.R.Rep. No. 91-413, 91st Cong. 1st Sess. 58-60 (1969) ; S.Rep. No. 91-552, 91st Cong. 1st Sess. 86-91 (1969), U.S.Code Cong. & Admin.News, p. 1645. See also §§ 201(f) (4) (B), (C) of the Tax Reform Act of 1969 for the detailed exceptions to application of the Act to decedents dying after 1969.

7. For an example of disallowance of the deduction because of the requirement that as of the date of death, "the possibility that the charitable transfer will not become effective is so remote as to be negligible," see Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S. Ct. 229, 99 L.Ed. 246 (1955).

broad to constitute an "ascertainable standard" which was "fixed and capable of being stated in definite terms of money." Consequently, the Court held that the present value of the charitable remainder was not ascertainable. Merchants National Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 257–258, 263, 64 S.Ct. 108, 88 L.Ed. 35 (1943).

In contrast to the foregoing cases the Supreme Court upheld a charitable deduction where the power to invade extended to amounts "that may be necessary to suitably maintain [my wife] in as much comfort as she now enjoys." Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647 (1929). Both the taxpayer and the Tax Court place great emphasis on the language of Mr. Justice Holmes in *Ithaca Trust, supra,* 279 U.S. at 154, 49 S.Ct. at 291 where he stated that the above power would not preclude a charitable deduction since the uncertainty of the amount of the gift to the charity was not "appreciably greater than the general uncertainty that attends human affairs." That statement, however, was made in the context of a finding by the Court that the above standard "was fixed in fact and capable of being stated in definite terms of money," and that the income of the trust was "more than sufficient to maintain the widow as required" by the stated standard. Mr. Justice Holmes' statement therefore, actually amounted to determining it was very unlikely, in view of the amount of the income generated by the corpus, that principal itself would have to be invaded. As the Tax Court aptly stated below, "[a]ll trusts are subject to the vicissitudes of the economy as well as depletion through unwise, if not imprudent or unreasonable, decisions on the part of the trustees." 52 T.C. at 836. If, however, invasion were to become necessary, the amounts would be subject to a readily ascertainable standard. This narrow holding has since been strictly applied by the Supreme Court in *Merchants*

*Bank, supra, Union Planters Bank, supra,* and *Sternberger's Estate, supra.*

Taxpayer argues that none of the above cases is controlling here because they each involved direct, dispositional powers to invade corpus, whereas Mrs. Stewart's trust agreement allows only indirect, administrative invasions of corpus. The taxpayer contends that such powers are only incidental and intended to allow the trustee to resolve doubtful cases without resorting to a court ruling or risking a surcharge. Indeed, despite the extremely broad language of the powers conferred here, taxpayer argues that New York courts would hold the trustee to a measurable and ascertainable standard.

The government contends that the possible effects of the indirect powers of invasion granted in the Stewart trusts are analogous to what the Supreme Court has condemned in the cases cited above, and that the Tax Court and the taxpayer have misconstrued the law of New York.

As this Court stated in Zentmayer's Estate v. Commissioner of Internal Revenue, 336 F.2d 488, 490 (3rd Cir. 1964), the central issue with respect to powers of invasion is "not what the trustees [are] likely to do, but what they [have] the power to do," and whether that power is limited by an ascertainable standard. In addition, the wording of the trust instrument, rather than extrinsic circumstances, must "furnish the basis for an objective standard" of ascertainability. Seubert v. Shaughnessy, 233 F.2d 134, 137 (2d Cir. 1956). Among the powers granted to the trustee in the Stewart trusts are (1) the power to invest in and to hold any type of property, including shares of investment companies and wasting assets, without the duty to diversify investments, and without regard to restrictions placed upon fiduciaries by any rule of law; (2) the power to apportion between principal and income any accrued but unpaid income on property acquired by the trust, any dividend of whatever

kind, any property received upon a corporate reorganization, consolidation, merger, or dissolution, any payment in respect of a wasting asset and "any other receipt whatsoever"; (3) the power to determine whether or not to amortize the premium at which any property may be received to depreciate any expense in connection with any property; (4) the power to discontinue any sinking fund or depreciation account and to treat the same as income; and (5) the power to pay from either principal or income any deficit from the operation of property or any charge against the trust estate. A most important item in this list is the very broad power to apportion receipts between principal and income. If the powers set forth in the trusts are literally and fully exercised, the charities might receive nothing, or an amount substantially less than that computed actuarially.[8] For example, the trust corpus could be wholly depleted by investing in a leasehold or mineral interest, and allocating all receipts to the income account. Such result is similar to the possibilities in direct invasion cases.

■ The crucial question in this case thus becomes whether the fiduciary duties imposed by state law operate to restrict the trustee's exercise of the above powers in such a manner so as to insure that the amount of the charitable interest is "presently ascertainable." *Cf.* Peoples Trust Co. of Bergen County v. United States, 412 F.2d 1156 (3rd Cir. 1969). A fundamental concern is whether the charity might not receive benefits commensurate with the amount of the tax deduction allowed because of the terms of the trustee's powers. In this regard we must bear in mind that "the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable." *Merchants Bank, supra* 320 U.S. at 261, 64 S.Ct. at 111.

In accordance with the decedent's intent specifically expressed in the trust instrument and the situs of the trusts, the parties have agreed that the laws of New York govern the administration of this trust. An early federal district court decision in New York, Colt v. Duggan, 25 F.Supp. 268 (S.D.N.Y.1938), considered the effect of a power to allocate items between income and principal for purposes of the income tax deduction allowed for amounts paid or permanently set aside for a charitable purpose under the predecessor of § 642(c) of the Code. Because of the other possibilities of invasion in the will, and later developments in New York law, the *Colt* case offers little guidance now.

The latest federal case construing New York law on this subject is Bankers Trust Co. v. United States, 308 F. Supp. 545 (S.D.N.Y.1970). The power complained of there was contained in Article Seventeenth of the will:

> "All stock dividends, to the extent permitted by law, shall be treated as principal, and all cash dividends, including extraordinary cash dividends, and dividends on mining stocks and other wasting investments, but excluding liquidating dividends, shall be treated as income * * *"

Judge Lloyd F. MacMahon found that under New York law, this power would not allow the corpus to be depleted to the detriment of the charitable remaindermen without a violation of the trustees' fiduciary duties. We were informed at the oral argument in the present case that the Government has not appealed *Bankers Trust* on this point. Among the cases relied on by Judge MacMahon is In re Estate of Dickson, 38 Misc.2d 678, 237 N.Y.S.2d 572, 576 (1963), where the Surrogate's Court for New York County held that an executor must act "for the best interests of all persons interested in the estate." Judge MacMahon pointed out that de-

---

**8.** Because the estate tax must be computed at the time of death, the Regulations provide actuarial tables for computing the present value of remainder interests. See § 20.2031-7 of the Regulations.

spite trust provisions granting the trustees investment discretion much broader than that otherwise allowed under what is now the New York Estates, Powers and Trusts Law ("EPTL" McKinney 1967) trustees are not free from the standards of good judgment and prudence with which all trustees must act. Stated differently, "[t]he yardstick for determining the duties of trustees is governed by the rule of the 'prudent man'". In re Gould's Will, 17 A.D.2d 401, 234 N.Y.S.2d 825, 828 (3d Dept. 1962); *see also* In re Hubbell's Will, 302 N.Y. 246, 97 N.E.2d 888 (1951). Judge MacMahon's decision may also have been influenced by the fact that the life tenants had died and the charitable remaindermen had in fact received the bequests at the time the question of the charitable deduction was litigated in the district court.

The district court in *Bankers Trust* could have framed its decision more narrowly, based on a precise reading of the instrument. That is, the term "dividends" used in Article Seventeenth has a specified legal meaning—generally a distribution of the earnings or profits of a corporation to its shareholders. See, for example, the highly articulated rules of EPTL § 11–2.1(e). A distribution by a company owning wasting assets, such as a mining company, must be apportioned between income beneficiaries and remaindermen (at least in the absence of a specific grant of discretion as made in the Stewart trusts) because the income beneficiary is ordinarily entitled only to the income portion of the distribution. Matter of Hopkins' Estate, 171 Misc. 910, 14 N.Y.S.2d 71 (Surr. New York 1939); In re Haldeman's Estate, 208 Misc. 419, 143 N.Y.S.2d 396 (Surr. New York 1955); In re McDonnell's Will, 32 Misc.2d 471, 222 N.Y.S.2d 454 (Surr. Nassau 1961). In addition, Article Seventeenth in *Bankers Trust* specifically

excludes "liquidating dividends" from being treated as income. This provision would appear to offer additional protection to the remainderman with respect to payouts from wasting assets. By contrast to the specific directions of allocation given in *Bankers Trust*, the trustee of the Stewart trusts has been given plenary power over all receipts. The grant of discretion in the Stewart trusts, therefore, is considerably broader than that in *Bankers Trust*.

Taxpayer relies heavily on In re Talbot's Will, 170 Misc. 138, 9 N.Y.S.2d 806 (1939), in which the Surrogate's Court of Orange County did not permit the trustee to allocate an item to corpus rather than to income, even though a clause in the will granted the trustees broad powers "to determine" whether "any moneys, stock or securities received by them are to be considered as capital or income." The court there reasoned that where a will is the work of a competent draftsman, its provisions are to be given their strict legal connotation. Therefore, the above power granted to the trustees must be read in conjunction with the dispositive intent of the decedent in order to ascertain the dimensions of the power. Because of New York's then public policy against accumulating trust income, and because the decedent expressed no intent to overcome this policy, the court held that the power "to determine" items of corpus and income was to be exercised in accord with settled principles of allocation, and was meant only to protect the trustee in doubtful situations.

New York's present public policy on this subject is declared in its Estates, Powers and Trusts Law, McKinney's Consol.Laws, c. 17–b.[9] Section 11–2.1(a) of that law provides in part:

"(1) A trust shall be administered with due regard to the respective interests of income beneficiaries and re-

---

9. Although the EPTL is not literally applicable to the trusts created by Mrs. Stewart because she died prior to its effective date (see EPTL § 1–1.5), the provisions of § 11–2.1 are essentially reenactments of

New York Personal Property Law §§ 27–a–g (enacted April 22, 1964; effective June 1, 1965), which itself was applicable "to any receipt or expense received or incurred after [its] effective date * * *."

maindermen. A trust is so administered with respect to the allocation of receipts and expenditures if a receipt is credited or an expense is charged to income or to principal or partly to each * * * (C) * * * in accordance with what is reasonable and equitable in view of the interests of those entitled to income as well as those entitled to principal and in view of the manner in which men of ordinary prudence, discretion, and judgment would act in the management of their own affairs.

(2) If the trust instrument gives the trustee discretion in crediting a receipt or charging an expenditure to income or principal or partly to each, no inference that the trustee has or has not improperly exercised such discretion arises from the fact that the trustee has made an allocation contrary to the provisions of this section."

The powers of a trustee under § 11–2.1(a) are so broad that a substantial question was raised in New York whether a trustee could, in effect, deprive a surviving spouse of substantially all of the income of a trust for her benefit, by the manner in which he allocated receipts and expenses.[10] This problem was solved by specific amendment to EPTL § 5–1.1—governing the rights of surviving spouses—which confers jurisdiction on the Surrogate's Court to supervise the fiduciary so as to prevent interference with the spouse's income. Otherwise, the provisions of § 11–2.1(a) remain in full effect.

Thus the Government argues that the trustee for the Stewart trusts may well act with the purest motives and always in good faith, but state law will not provide any fixed and ascertainable standard of investment and management conduct for the trustee. Here the decedent's dispositive intent does not reveal any desire to favor the life tenants over the remaindermen, but decedent's administrative intent was to rely solely upon the trustee's judgment and discretion rather than upon the normal rules of state law governing the administration of trusts. Such broad powers have been previously recognized as enabling a trustee, acting safely within his prerogatives, to shift "very substantially * * * the economic benefits of the trusts between the life tenants and the remaindermen," State Street Trust Co. v. United States, 263 F.2d 635, 639 (1st Cir. 1959).[11] Although the First Circuit in Old Colony Trust Co. v. United States, 423 F.2d 601 (1970) has recently qualified the *State Street Trust* decision as it applies to Massachusetts law, the statement quoted nonetheless remains correct with respect to New York law. The doctrine of In re Talbot's Will, *supra,* and In re Estate of Lecompte, *supra* (the trustee would always have to satisfy the court that the allocation was in fact prudent, if it [is] challenged")[12] does not provide the requisite ascertainable standard for amounts left to charity where the powers are so broad as here.

Finally, taxpayer argues that the broad language employed in the trust instruments should not be literally construed because it is "mere boiler plate."

(Personal Property Law § 27–m). *See also* In re Estate of Lecompte, 52 Misc.2d 549, 276 N.Y.S.2d 208 (Surr.Ct.N.Y. County 1966).

10. *See* Conway, Surviving Spouse's Right of Election in New York Where Trust Income May be Divested, 34 Ford.L.Rev. 593 (1966) ; see also Surrogate's Association Note appended to EPTL § 5–1.1 as amended in 1969.

11. We note, and fully concur with the limiting concepts expressed by Learned Hand in Stix v. Commissioner of Internal Revenue, 152 F.2d 562, 563 (2d Cir. 1945) : "Nevertheless, we agree that no language, however strong, will entirely remove any power held in trust from the reach of a court of equity. After allowance has been made for every possible factor which could rationally enter into the trustee's decision, if it appears that he has utterly disregarded the interests of the beneficiary, the court will intervene. Indeed, were that not true, the power would not be held in trust at all ; the language would be no more than a precatory admonition."

12. 276 N.Y.S.2d at 210.

However, characterizing this critical language does not help us resolve matters of taxability. The issue still persists whether the power of the trustee is limited in a measurable manner. The answer to this question for federal tax purposes cannot be determined by an inquiry into the care or carelessness of the drafter. Estate tax questions regarding powers must be answered by reference to possibilities, even though the powers granted may never be exercised.[13] Under the inquiry regarding possibilities, the amount to be received by the charities here is not "presently ascertainable."

Accordingly, the judgment of the Tax Court will be reversed.

---

13. Judge Freedman aptly stated these principles in Strite v. McGinnes, 215 F.Supp. 513, 515–516 (E.D.Pa.1963): "Boiler plate it may be, in the sense that the words may have been chosen indiscriminately by the scrivener without that imaginative understanding which is the hallmark of the skillful draftsman. Executors confronted with substantial tax liability because of the carefree use of words in a will, especially words which never were put to use, must view a scrutiny of their meaning as an academic intrusion into the world of reality. But we deal here with the *power* to consume property, regardless whether the power was exercised or lay dormant. The grant of power in the will is the test of taxability, and the reality which governs is the language of the grant rather than the extent of its exercise."