## Weiss Estate

*Edward N. Polisher,* for Helen L. Weiss, Montague H. Tyson and Edward N. Polisher, as Executors of the Estate of Abram H. Weiss, and trustees.

*M. Paul Smith,* for Charles Lazrow.

*Ronald H. Israelit,* for Morton C. Weiss, Philip Weiss, Esther Polisher, Robert Lazrow, Philip Nalibotsky, Edward Weiss, Morris Weiss, Morris Skversky, David Skversky, Linda J. Salz, income beneficiaries under Trust "B" created by decedent's will.

*James L. Price,* Special Assistant Attorney General, for Commonwealth.

TAXIS, P. J., July 11, 1972.—This matter comes before the court by way of a petition for declaratory judgment by the executors and trustees of trust "B" under the will of Abram H. Weiss, seeking a determination and declaration concerning the discretion afforded the trustees of trust "B." More particularly, the issue is whether the powers granted by the trust instrument, i.e., the will, to the trustees precludes the value of the charitable remainder of the trust from being "presently ascertainable" at decedent's death. Notice was given to the Federal government and all parties in interest, as evidenced by the affidavits of service submitted.

Abram H. Weiss died on March 6, 1968, survived by his wife, Helen L. Weiss. Testator's will and codicils

were probated and letters granted to the present petitioners.

Testator divided his estate into two separate trusts: trust "A" was the marital trust for his wife; trust "B" was the nonmarital portion of his estate established for the benefit of certain income beneficiaries, including his wife.

The trustees of trust "B" have power in their sole discretion to pay the income of the trust for the benefit of named beneficiaries in such proportions as they may deem necessary or desirable. Any undistributed income is directed to be paid to the A. H. and Helen L. Weiss Foundation, a charitable entity recognized by the Internal Revenue Service and created by decedent and his wife for the purpose of devoting a portion of their wealth to charitable causes. The trustees were given no powers to invade the trust principal. Upon the death of Helen L. Weiss, the principal of the trust is directed to be paid absolutely to the Weiss Foundation. Under paragraph Eighth of the will, the trustees, these petitioners, are given administrative powers among which are the following:

"C. To retain all stocks, bonds and investments owned by me, and to invest and reinvest in other stocks, bonds and investments, without being confined to what are known as 'legal investments,' and to sell and transfer the same, whether in person or by attorney, without liability on the part of the purchasers to see to the application of the purchase or consideration monies. The purchase of life insurance and annuities for the benefit of any trust estate is authorized hereunder.

"D. To purchase securities at a premium and to exercise any option to subscribe for stocks, bonds or other investments; and to grant options and proxies

and to enter into voting trust agreements, affecting any estate investments . . .

"K. As to all trusts, except that set out in subparagraph 'Fourth A' of this Will, which is intended to qualify as part of the marital deduction for my wife, Helen L. Weiss, the Trustees, in their sole discretion shall have the power to allocate all capital gains resulting from the sale or exchange of trust assets, to income or to principal, or partly to either, in accordance with applicable law, and the determination of the Trustees in this respect shall be binding upon all beneficiaries; provided, further, that with respect to all trusts other than Trust 'A', if the Trustees invest in the shares of a regulated investment company, a real estate investment trust or similar entity providing favorable tax treatment under the Internal Revenue Code, notwithstanding that the Trustees are given an election to receive capital gain dividends of such entity or entities in cash or in additional shares, or that capital gain dividends, are distributed to the Trustees in cash without the opportunity of any election, such capital gain dividends shall be deemed principal; and further, all corporate distributions made to the Trustees in the shares of the distributing corporation, however described or designated by the distributing corporation, shall be deemed to be principal."

The executors, in the course of their duties, filed a Federal estate tax return and claimed a deduction in the amount of $1,053,865.07 for the charitable remainder bequeathed to the Weiss Foundation under trust "B" of the will. The Federal tax collector took the position that a deduction for the charitable remainder was not allowable for the reasons that (1) the powers given to the trustees under paragraph Eighth, quoted above, particularly the discretionary

powers, to invest in any investments without being confined to legal investments, (2) to allocate capital gains between income and principal and (3) to purchase securities at a premium, constituted an indirect power to invade the principal of trust "B" thereby making it impossible presently to ascertain the value of the charitable remainder.

A protest was duly filed which was subsequently rejected by the Federal tax collector and a statutory notice of deficiency dated May 17, 1972, asserting an estate tax deficiency as a result, in part, of the disallowance of the deduction of the present value of the charitable remainder under trust "B."

At the threshold, the question of whether a declaratory judgment is proper procedure may be quickly laid to rest, because this court is convinced that the resolution of the question as to whether the trustees have a measurable standard which will control the exercise of their discretionary power is a matter of Pennsylvania law peculiarly within the exclusive jurisdiction of the Orphans' Court Division. Cf. Merrick Estate, 443 Pa. 388. See also Purnell Estate, 424 Pa. 263; Ranck Estate, 33 D. & C. 2d 589.

In recent months, several cases in the area of charitable remainder deductions have been decided in the Federal courts on the basis of interpretations of State property law: Estate of Stewart v. Commonwealth, 436 F. 2d 1281 (3 Cir., 1971) (involving New York law); Peoples Trust Company of Bergen County v. U.S., 71-USTC, paragraph 12, 786 (3 Cir. 1971) (involving New Jersey law); and Speer v. Commonwealth, 57 P-H T.C. Rep. §57.83 (1972) (involving Delaware law). However, no such case has yet been decided with reference to Pennsylvania law. Thus, the instant proceeding presents this court with the opportunity of deciding for itself the local property law issues

involved herein. In a similar context, the Massachusetts Supreme Court undertook to make just such a determination with regard to a Massachusetts charitable remainder trust: Worcester County National Bank v. King, 268 N. E. 2d 838 (1971).

Moreover, if the declaratory judgment is granted, it will finally determine the Federal estate tax liability of the Weiss Estate with regard to this issue and will end all uncertainty concerning the limits imposed upon the exercise of the trustee's discretion. Therefore, the instant petition comes directly within the purview of section 6 of the Pennsylvania Declaratory Judgments Act, 12 PS §836.

Turning now to the main question presented, this court is, of course, obliged to ascertain testator's intent. "The court's task in ascertaining a settlor's intent has likewise often been reiterated: 'In order to ascertain the actual intent of the settlor or testator, the Court must place itself in his armchair and consider not only the language and scheme of the instrument but also the facts and circumstances with which he was surrounded; and these surrounding facts and circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property. . .' Pew Trust, supra, at 107, 191 A. 2d at 405 (citations omitted)": Pew Trust-Benson Estate, 447 Pa. 62, at p. 68.

Turning now to an examination of testator's distributive scheme, trust "B," which is a sprinkling trust, was created for the benefit of 14 named income beneficiaries with income to be distributed to such beneficiaries in whole or in part in the full discretion of the trustees during the lifetime of testator's widow. Further, any undistributed income, and, upon the death of testator's widow, the principal are set aside for the exclusive benefit of the Weiss Foundation. It is

important to note at this point that testator did not grant to the trustees any power to invade the trust principal; thus, there is demonstrated an intent not to favor the income beneficiary at the expense of the charitable remaindermen. In addition, the last portion of subparagraph Eighth K provides that if the trustees invest in a mutual fund or in a real estate investment trust, capital gain dividends are deemed to be principal notwithstanding the availability of an election by the trustees to receive such dividends in cash or in additional shares. Testator went on further to provide that all corporate distributions made to the trustees in the shares of the distributing corporation are to be allocated to principal. At the time the will was probated, 1963, Pennsylvania Law was unclear as to whether the capital gain dividends of mutual funds and corporate stock dividends were to be allocated to principal or to income. These provisions thus were added by testator in order not to risk jeopardizing the interest of the charitable remainder. The conclusion is, therefore, almost inescapable that this testator intended to provide the maximum sum for charitable purposes, free of estate and inheritance taxes. Thus, to the extent that such taxes are imposed on the charitable gift, the funds available for charitable purposes would be reduced and plainly run counter to testator's intention.

In addition to testator's general intent to preserve principal for the charitable remainderman, the express language of subparagraph Eighth K provides that the trustees' discretionary power to allocate capital gains to principal or to income must be exercised "in accordance with applicable law." Thus, any allocations of capital gains must be governed by section 3 (2) of the Principal and Income Act of April 24, 1947, which provides that:

"All receipts of money or other property paid or delivered as to the consideration for the sale, or other transfer, not a leasing or letting of property, forming a part of the principal . . . shall be deemed principal unless otherwise expressly provided in this act. Any profit or loss, resulting from any change in form of principal, shall enure to or fall upon principal, unless otherwise expressly provided in this act."

The Principal and Income Act provides that, absent an express provision otherwise, the act directs the manner of ascertaining income and principal and the apportionment of receipts and expenses. Since the will presently before the court was executed after the adoption of section 3 (2) of the Principal and Income Act, there can be no question that testator intended that the Principal and Income Act should apply and the trustees should be governed by its provisions in allocating capital gains.

The language of subparagraph Eighth K clearly gives the trustees only a legal discretion to allocate capital gains between principal and income and limited the trustees' discretion in accordance with the requirements of section 3(2) of the Principal and Income Act just as completely as if it were specifically set forth in the will itself. Furthermore, should a trustee exercise his discretion outside the limits of section 3(2) of the Principal and Income Act, this court, on petition of a charitable remainder, possesses the power to compel a trustee to exercise his discretion in good faith and within the bounds of reasonable judgment. Thus, the applicability of section 3(2) of the Principal and Income Act provides these trustees with a measurable standard for the exercise of their discretionary powers to allocate capital gains and, for Federal estate tax purposes renders the value of this charitable remainder presently ascertainable.

576

After consideration of the arguments and briefs of counsel, the court enters the following order:

And now, July 11, 1972, upon consideration of the petition and answers filed in the case, it is ordered and decreed that the trustees of trust "B" under the last will and testament of Abram H. Weiss, deceased, have only a legal discretion to exercise the administrative powers granted to them in subparagraphs "Eighth C, D and K" under that will; that pursuant to that legal discretion, their power to allocate capital gains between principal and income, as set forth in subparagraph "Eighth K" of Abram H. Weiss's will, must be exercised in accordance with section 3(2) of the Principal and Income Act of 1947; that the apportionment of trust receipts realized as a result of the exercise of the trustees' power to purchase securities at a premium, as set forth in subparagraph "Eighth D," is controlled by section 6 of the Principal and Income Act of 1947; and that pursuant to the exercise of the trustees' power to select investments for the principal of trust "B," as set forth in subparagraph "Eighth C" of Abram H. Weiss's Will, the trustees are not permitted to invest in assets which by their nature might deplete principal to the detriment of the charitable remainderman.